MAYNARD CRONIN ERICKSON CURRAN & SPARKS, P.L.C.
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185

MICHAEL K. JEANES
Clerk of the Superior Court

By MARK LEONG, Deputy
Date 01/09/2006 Time 05:12 PM
Description      Qty      Amount
-------- CASE# CV2006-000364 --------
CIVIL NEW COMPLAINT  001      245.00

TOTAL AMOUNT                   245.00
     Receipt# 00007592639

1   Daniel D. Maynard, No. 009211
2   Michael D. Curran, No. 012677
    **MAYNARD CRONIN ERICKSON**
    **CURRAN & SPARKS, P.L.C.**
3   1800 Great American Tower
    3200 North Central Avenue
4   Phoenix, Arizona 85012
    (602) 279-8500
5
    Attorneys for Plaintiff
6
7              IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
8                 IN AND FOR THE COUNTY OF MARICOPA
9   Ultimate Creations, Inc., an Arizona
    corporation, Warrior and Dana Warrior,          CV2006-000364
10  husband and wife,
11                       Plaintiffs,                 **COMPLAINT**
    v.
12
    Vincent K. McMahon and Linda
13  McMahon, husband and wife; Titan
    Sports, Inc., a Connecticut corporation,
14  World Wrestling Entertainment, a
    Connecticut corporation,
15
                         Defendant.
16
17        Plaintiffs, Ultimate Creations, Inc. ("Ultimate Creations"), Warrior and Dana Warrior
18  (hereinafter collectively "Warrior") for their complaint against Defendants, Vincent K.
19  McMahon and Linda McMahon, husband and wife ("McMahon"), Titan Sports, Inc., and
20  World Wrestling Entertainment, Inc. (hereinafter referred to jointly as "Defendants") alleges
21  as follows:
22                    **PARTIES, JURISDICTION, AND VENUE**
23        1.    At all times material to this lawsuit, Ultimate Creations is an Arizona corporation
24  organized and existing under the laws of the State of Arizona and doing business in Maricopa
25  County, Arizona and was a party to a prior lawsuit filed in this court captioned *Warrior &*
26  *Ultimate Creations, Inc. v. Titan Sports, Inc., et al.*, CV96-15377 ("Arizona lawsuit") and was
    a party to a Settlement Agreement and Mutual Release entered into as of March 3, 2000 in the



EXHIBIT    1

1  Arizona lawsuit ("Agreement") attached as Exhibit 1. It is the owner of certain intellectual
2  property, including but not limited to federally registered trademarks, service marks, trade
3  dress and common law trademarks and service marks associated with the wrestling character,
4  the Ultimate Warrior (referred to jointly hereinafter as "intellectual property").

5      2.      Warrior and Dana Warrior are husband and wife and at all times material to this
6  lawsuit, are residents of the State of New Mexico and were parties to the Arizona lawsuit and
7  were parties to the Agreement.

8      3.      Upon information and belief, at all times pertinent to this lawsuit, Defendants
9  Vincent K. McMahon and Linda McMahon are husband and wife and at all times material to
10  this lawsuit, are residents of the State of Connecticut and were parties to the Arizona lawsuit
11  and were parties to the Agreement.

12      4.      Titan Sports, Inc. is a Connecticut corporation organized and existing under the
13  laws of the state of Connecticut and doing business in Maricopa County, Arizona and was a
14  party to the Arizona lawsuit and the Agreement.

15      5.      Upon information and belief, at all times material to this lawsuit, World
16  Wrestling Entertainment, Inc. is the successor entity to World Wrestling Federation, Inc. which
17  was a party to the Arizona lawsuit and the Agreement.

18      6.      This Court has jurisdiction pursuant to Article 6, Section 14 of the Arizona
19  Constitution, A.R.S. §12-1323, and Agreement.

20      7.      Venue is proper in this Court pursuant to A.R.S. §12-401.

21                              **GENERAL ALLEGATIONS**

22      8.      On or about March 3, 2000, Ultimate Creations and Warrior entered into an
23  Agreement with Defendants.

24      9.      The Agreement settled two lawsuits between the Parties, one in the Superior
25  Court of the State of Arizona in and for the County of Maricopa, Cause No. CV96-15377 and
26  a separate action captioned Titan Sports, Inc. v. James Hellwig a/k/a Warrior and Ultimate

- 2 -

1   Creations, Inc. in the United States District Court for the District of Connecticut, Civil Action
2   No. 398 CV 00467 (EBB)(the "Connecticut lawsuit").

3       10.    The Parties agreed that the Superior Court of the State of Arizona in and for the
4   County of Maricopa shall retain jurisdiction over any and all claims, disputes or controversies
5   arising from and in connection with or in any way relating to the enforcement, interpretation
6   or adjudication of the Parties' obligations hereunder and such Court shall be the sole forum
7   in which any disputes may be heard.  (Ex. 1, pp. 4, 9)

8       11.    The Agreement was to be confidential and the Parties agreed not to disparage
9   one another at any time in any place in any media.  (Ex. 1, pp. 5, 8)

10       12.    The Parties agreed that Titan was the owner of certain copyrighted works that
11   depicted the Ultimate Warrior character and had all rights to exploit those copyrighted works
12   in any and all media.  (Ex. 1, p. 12)

13       13.    The Parties agreed that Warrior had the right to perform the Ultimate Warrior
14   character in the future in any and all manner.  (Ex. 1, p. 12)

15       14.    The Agreement provided that Warrior owns the trademarks and service marks
16   to Ultimate Warrior and Warrior characters.  Notwithstanding the foregoing, Warrior
17   acknowledged and agreed that Titan shall continue to have the right of fair use afforded it as
18   a result of its ownership of its copyrighted works.

19       15.    The Parties agreed that Warrior has the right to make his own copyrighted works
20   depicting the Ultimate Warrior and Warrior characters or to authorize others to do so.

21       16.    Titan agreed that Warrior has worldwide rights to the trademarks and service
22   marks concerning the Ultimate Warrior and Warrior characters.  (Ex. 1, p. 14)

23       17.    Pursuant to the Agreement, the Parties agree neither they nor their agents,
24   servants, employees or representatives and those persons in active concert or participation with
25   the Parties and those persons under their direction or control shall not make, publish,
26   broadcast, air, print or distribute any comments, statements, or suggestions (written, verbal or

- 3 -

1  otherwise), directly or indirectly, that would disparage, defame, criticize, injury or harm the
2  reputation of any other Party.

3      18.    Upon information and belief, on or about August 2005, the Defendants made and
4  released a DVD entitled The Self-Destruction of the Ultimate Warrior (hereinafter referred to
5  as the DVD).

6      19.    The wrongful conduct of the Defendants in making, marketing and selling the
7  DVD was motivated by spite or ill will.

8      20.    The Defendants acted to serve their own interests, having reason to know and
9  disregarding a substantial risk that their conduct might significantly injure the rights of
10 Ultimate Creations and Warrior.

11     21.    The DVD is outrageous in that it disparages, defames, criticizes, injures, and
12 harms the reputation of Warrior and Ultimate Creations.

13                          **First Claim For Relief**

14                          **(Breach of Contract)**

15     22.    Ultimate Creations and Warrior incorporate the allegations set forth in
16 paragraphs 1 through 21 of the Complaint as if fully set forth herein.

17     23.    Defendants are in breach of the Agreement for the following reasons:

18          A)    the Agreement was to protect Warrior and Ultimate Creations from having
19 their reputations disparaged, defamed, criticized, injured or harmed by the Defendants. Upon
20 review of the footage of the DVD, it is clear that the negative footage was intended to harm
21 the reputation of Warrior and to devalue or injure the value of the intellectual property owned
22 by Ultimate Creations and Warrior and has caused such injury.

23     24.    As a result of Defendants' breach of the Agreement, Ultimate Creations and
24 Warrior have been damaged in an amount to be determined at trial together with attorney's
25 fees, costs and expenses.

26

- 4 -

## Second Claim For Relief

### (Defamation)

25.     Ultimate Creations and Warrior incorporate the allegations set forth in paragraphs 1 through 24 of the Complaint as if fully set forth herein.

26.     The Defendants published the DVD knowing it contained false material, including the title intending to bring Warrior and Ultimate Creations into disrepute, contempt or ridicule, or intending to impeach Warrior's honesty, integrity, virtue or reputation.

27.     As a result of the publication of the DVD, the reputation of Warrior and Ultimate Creations has been damaged in an amount to be determined at trial.

## Third Claim For Relief

### (Defamation)

28.     Ultimate Creations and Warrior incorporate the allegations set forth in paragraphs 1 through 27 of the Complaint as if fully set forth herein.

29.     The Defendants published the DVD with knowledge of the falsity or reckless disregard for the truth and it placed Warrior in a false light highly offensive to a reasonable person.

30.     The DVD contains major misrepresentations of Warrior's character, history, activities or beliefs.

31.     Warrior has suffered emotional distress from the publication of the DVD.

## Fourth Claim For Relief

### (Declaratory Judgment Action)

32.     Ultimate Creations and Warrior incorporate the allegations set forth in paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33.     The intent of the Agreement was that the Defendants had the right to use their copyrighted works that contained the Ultimate Warrior character in any manner that did not disparage Warrior or the intellectual property owned by Ultimate Creations.

34.     The Agreement provides that Warrior owns the worldwide rights to the service marks and trademarks associated with Ultimate Warrior and Warrior characters and that Titan had no claims in the marks other than it had the right to fair use of its copyrighted materials that contained the character.

WHEREFORE, Plaintiffs pray that judgment be enter in their favor and against the Defendants jointly and severally for each claim for relief as follows:

A.      For damages in an amount to be determined at trial;

B.      For an award of punitive damages in an amount to be determined at trial;

C.      For costs and attorneys' fees as allowed by law;

D.      For pre-judgment and post-judgment interest as allowed by law;

E.      For judgment that all footage, notes, films, disks, tapes and all materials produced in this project that resulted in the DVD be turned over to Ultimate Creations and Warrior and Defendants not keep or distribute any copies;

F.      For a judgment that Warrior and Ultimate Creations owns all the trademarks and service marks associated with the Ultimate Warrior and Warrior character; and

G.      For any further relief the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiffs respectfully demand a jury trial on all appropriate issues.

- 6 -

1   DATED this 9th day of January, 2006.

2                                   MAYNARD MURRAY CRONIN
                                    ERICKSON & CURRAN, P.L.C.
3

4                                   By
                                       Daniel D. Maynard
5                                      Jennifer A. Sparks
                                       1800 Great American Tower
6                                      3200 Central Avenue
                                       Phoenix, Arizona 85012
7                                      Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EXHIBIT 1

1       IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

2          IN AND FOR THE COUNTY OF MARICOPA

3

4   WARRIOR & ULTIMATE CREATIONS, )
    INC.,                    )
5                         )
              Plaintiffs,  )
6                        )
      vs.              )   CV 96-15377
7                      )
   TITAN SPORTS, INC., ET AL,   )
8                      )
            Defendants.  )
9

10

11

12                 Phoenix, Arizona
                  March 3, 2000

13

14      BEFORE:  THE HONORABLE STEVEN D. SHELDON
              Superior Court Judge
15

16

17

18       REPORTER'S TRANSCRIPT OF PROCEEDINGS

19       CONFIDENTIAL SETTLEMENT AGREEMENT

20

21

22

23

24  COPY                 HELENE PAUSTIAN, RPR
                       Official Court Reporter
25

SUPERIOR COURT - MARICOPA COUNTY

1                          A P P E A R A N C E S

2        FOR THE PLAINTIFFS:

3                    HEBERT SCHENK & JOHNSEN
            BY:      SHAWN K. AIKEN
4                    Attorney at Law

5                    HART, BAXLEY, DANIELS & HOLTON
            BY:      JOSEPH T. MURRAY
6                    Attorney at Law

7        FOR THE DEFENDANTS:

8                    KIRKPATRICK & LOCKHART LLP
            BY:      JERRY S. MCDEVITT
9                    Attorney at Law

10                   ALVAREZ & GILBERT
            BY:      JOHN T. GILBERT
11                   Attorney at Law

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1                                                      Phoenix, Arizona
                                                       March 3, 2000
2

3                    (The following proceedings took place in open

4        court:)

5                    THE COURT:  We are on the record, proceeding in the

6        matter of Warrior versus Titan Sports, Inc.  And it's my

7        understanding that a settlement has been reached.  Is that

8        correct?

9                    MR. AIKEN:  Your Honor, Shawn Aiken for plaintiff,

10       and that's correct.

11                   MR. MCDEVITT:  Jerry McDevitt for defendant.  We

12       believe that to be correct.

13                   THE COURT:  All right.  I will simply note for the

14       record it's my understanding that this is a confidential

15       settlement agreement.  I will request that the transcript

16       of this proceeding be sealed at the conclusion of this

17       proceeding and that it not be opened without the

18       permission of the Superior Court.

19                         And Mr. Aiken, if you would like to state

20       for the record what your belief is as to the terms of the

21       settlement agreement.

22                   MR. AIKEN:  I will attempt to do that, your Honor,

23       and then ask for Mr. Murray's assistance, if appropriate,

24       and then followed I'm sure by Mr. McDevitt.

25                         The parties agree that Titan Sports shall

1   pay $800,000 and then $90,000, in a way that I will

2   describe in just a moment, to Ultimate Creations, Inc.

3          Titan Sports within 30 days shall pay

4   $800,000 to Ultimate Creations, Inc.  Titan Sports then

5   within 30 days shall pay $90,000 to the clerk of the

6   Superior Court to be held in an interest bearing account.

7   The interest shall accrue to plaintiff's favor.

8          If, on March 15th, 2001, plaintiff's have

9   complied with the confidentiality provision that I will

10  describe in just a moment -- April 3rd then, 2001 -- the

11  clerk shall be directed by the Court to turn over the

12  balance of the account to plaintiff, Ultimate Creations,

13  Inc.

14         The Court, your Honor, shall retain

15  jurisdiction to hear any application by Titan Sports that

16  plaintiffs have allegedly briefed the confidentiality

17  provision.  Upon application, the Court will take

18  evidence, and only upon proof of a breach of

19  confidentiality provision directly attributable to

20  plaintiff shall the Court declare a breach of the

21  confidentiality provision.

22         If, and only if, there is a breach shall

23  there then be a forfeiture of the funds held in the

24  account.  I think I already stated assuming compliance

25  with the provision.  Then on April 3rd, 2001, the amount

1    in the account, as I say, shall be turned over to

2    plaintiff.

3              The confidentiality agreement encompasses

4    the terms of the settlement agreement.

5              In addition to the $890,000 that I just

6    described, Titan Sports, Inc., agrees that the Warrior

7    inventory on hand, as is, where is, shall be turned over

8    to plaintiff or plaintiff's designee.  These products are

9    as the parties can best determine today described in trial

10   Exhibit 584 and on document, Bates labeled, TJH02521.

11             The parties further agree they shall not

12   disparage one another in television, newspaper or the

13   internet.

14             The disposition on the pending cases between

15   these parties is the next topic.  The parties agree upon

16   payment of the $890,000, and that is as to the $90,000

17   upon deposit into the clerk's interest bearing account,

18   then this action and the action between the parties

19   pending in US Federal District Court for the District of

20   Connecticut shall be dismissed with prejudice.  Each party

21   to bear their own fees and costs.

22             The parties further agree that upon payment

23   of the amount I just described, $890,000, they shall

24   release one another from all claims whether known or

25   unknown, except as to the obligations otherwise described

1    in the agreement.  The intention there is that there be

2    mutual releases in a conventional sense.  But, of course,

3    obligations we are describing here in the agreement shall

4    remain in force.

5           The timing on the turnover of merchandise

6    I'm going to leave to Mr. McDevitt.  It's a detail we

7    haven't discussed.

8           Those are the deal points, your Honor.  The

9    further agreement, with counsel's consent, is that the

10   lawyers, although we are reciting an enforceable agreement

11   here on the record tonight, will see immediately to the

12   drafting of a more formal document and undertake to do

13   that within the next few days.  Thank you.

14        THE COURT:  My understanding is that the

15   preparation of the written document is not intended to

16   delay the enforceability of what is being placed on the

17   record today.  Is that correct?

18        MR. AIKEN:  That's correct.

19        THE COURT:  Okay.  Mr. McDeVitt.

20        MR. MCDEVITT:  Your Honor, just a few points on

21   Mr. Aiken's presentation that I think needs some

22   clarification.  There are some other things I'd like to

23   state as far as our understanding goes.

24           With respect to the inventory that's listed

25   on -- I believe you indicated Defendant's 584, we

1   understand we make no warranty, express, implied or of any
2   kind.  This is as is.  We make no warranty as to the
3   quantities listed on here or the qualities listed on here.
4   We don't want somebody coming back saying that some of the
5   inventory that's listed on here is gone, stuff sitting
6   around in warehouses for a couple of years.  We make no
7   warranty as to quantity.  We will transfer faithfully, as
8   we indicated to the Court, to Warrior.

9        THE COURT:  Mr. Aiken, just so I'm clear, that was
10   my understanding of what your intent was in stating as is,
11   where is.  Is that correct?

12        MR. AIKEN:  Correct.

13        THE COURT:  With reference only to the document
14   that indicated inventory, that type of merchandise that
15   you might expect to find there, as is, where is?

16        MR. AIKEN:  Correct.

17        MR. MCDEVITT:  The other point in terms of the way
18   Mr. Aiken stated when the release would be effective, I
19   think he indicated that the release, full release intended
20   by the parties, would be effective on the payment of the
21   $890,000, which conceptually could delay the release until
22   next year.  I don't think that's what was intended.

23        THE COURT:  I think what I heard was when the
24   $90,000 is deposited into the court, at that time the
25   money will have been paid.  Is that correct?

1          MR. AIKEN:  That's correct.

2          MR. MCDEVITT:  That's what I was going to suggest.

3          THE COURT:  That's what I thought I heard.  I also

4     understand it could have been interpreted the other way.

5     I think that's okay to clarify that.

6          MR. MCDEVITT:  All right.  Disparagement.  I might

7     have missed some words Mr. Aiken said, but I think it's

8     intended to mean broadly, the internet, TV, print of any

9     kind or media of any kind.  A general no disparagement

10    clause, anytime, anyplace.

11         MR. AIKEN:  Correct.

12         MR. MCDEVITT:  With respect to the $90,000 that's

13    being deposited with the court clerk, what we would

14    propose to do to make that less likely to be deemed a --

15    to be a forfeiture, is to make payment of that condition

16    precedent in compliance with that year.

17              If there is any allegation that has been

18    breached, it would be our obligation to prove it.  But if

19    it were proved that there was a breach of it, then because

20    the condition had not been satisfied to payment, the money

21    would come back to Titan with all the interest, so we

22    don't get into whether it's a forfeiture or something like

23    that.  It is a condition precedent to payment more

24    specifically than a contract obligation.

25         THE COURT:  Well, I'm not sure that adds anymore

1   clarification to what Mr. Aiken already said, because I
2   think the parties understand that the right to the 90,000
3   at the end of the term is contingent upon the fulfillment
4   of the terms of the confidentiality agreement.

5           MR. AIKEN:  Correct.

6           THE COURT:  If it is alleged and proven that it was
7   not complied with, then they don't get the money.  Unless
8   you are going to make a voluntary contribution to this
9   Superior Court, I would assume it goes back to you folks.

10          MR. MCDEVITT:  That's the next phase I was going to
11  get to.  Also, it is my understanding that the
12  confidentiality agreement is permanent, not for a year.

13          THE COURT:  I hope the parties understood that the
14  confidentiality agreement is an agreement that runs
15  through the entire course of the agreement in perpetuity.
16  That the clause applying to the 90,000 only occurs for one
17  year.

18              If there's an alleged breach at some later
19  date, and someone wants to come into court and allege it
20  and prove it, and prove the damages -- like any other
21  contract, if there's a breach, then the folks can do what
22  they want to do with it.

23          MR. MCDEVITT:  Your Honor, our understanding of the
24  confidentiality agreement binds not only plaintiff in this
25  case, but also the Warrior's wife, which is a material

1    part of this.  So she's going to have to signal her

2    agreement to this on the record in a binding way for that.

3         THE COURT:  I think that was probably one of the

4    assumptions everyone was working under, that she wasn't

5    going to go out and tell anyone.  I think there was an

6    assumption that it did bind them both, and which I think

7    they were probably operating under the entire time.  If

8    I'm mistaken on that -- let me make sure, though.

9         MR. MCDEVITT:  We did name -- something was said in

10   that material that did bind her.  We talked about that.  I

11   assume it's no problem, but we want to make it clear that

12   she, too, agrees to be bound by what I think is a

13   perfectly clear agreement and you folks don't have any

14   problem with that.

15        MRS. HELLWIG:  Is there something you want me to

16   say?  I agree to that.

17        THE COURT:  That's fine.

18        MR. MCDEVITT:  With respect to future relationships

19   between the parties -- I should say to be more precise,

20   the lack of, there's some language that we wish to put in

21   that we think reflects the understanding.

22             I talked with Mr. Murray and Mr. Aiken in

23   terms of the so-called intellectual property right for

24   purposes of this.  Where I use the word Titan, I'm

25   referring to Titan as well as the legal successor, World

1    Wrestling Federation Entertainment, Inc., which I assume
2    Shawn was also referring to whenever he was referring to
3    Titan.
4         THE COURT:  And I assume that applies to Ultimate
5    Creations, Inc., also, as do all the terms of the
6    agreement, because that's who is entering into it, as well
7    as Warrior?
8         MR. MCDEVITT:  We agree, Judge.  For purposes of
9    the clause, I'm going to read or the language I'm going to
10   read is the Ultimate Warrior and the Warrior character.
11   What I'm referring to -- what I'm simply referring to is
12   the Ultimate Warrior character rather than repeat Ultimate
13   Warrior.  The clause I'm about to read or the language I'm
14   about to read, rather than repeat Ultimate Warrior every
15   time, I'm simply going to state the Ultimate Warrior
16   character with our understanding that it refers to both
17   the Ultimate Warrior character and the Warrior character.
18         With that statement, it's our understanding
19   that the plaintiffs agree that Titan is the owner of the
20   character depicted in Titan copyright works, and in works
21   which record or depict the Ultimate Warrior character
22   which Mr. Hellwig, now known legally as Warrior, performed
23   with WWF, and have all rights afforded the owner of such
24   rights, including but not limited to the exploitation of
25   those rights in any and all media, including but not

1  limited to the internet, media forms now existing or in
2  the future without further or any compensation to the
3  plaintiffs or their successor, notwithstanding the
4  foregoing:  Warrior, the man, the legal entity formerly
5  known as James Hellwig, shall have the right to perform
6  the character in the future in any and all manner,
7  henceforth without the claim of infringement by Titan.
8              Titan or WWFE to make on his own right or
9  authorize others to make new copyright works depicting the
10  character which shall belong to him.
11              With respect to trademark and service mark
12  rights, it's our understanding that Warrior, formally
13  known as James Hellwig, shall own the trademarks and
14  service marks to Ultimate Warrior and Warrior characters.
15  But Titan shall, however, continue to have the right of
16  fair use of the marks and any and all other rights
17  afforded to it as a result of his ownership of and rights
18  to exploit the forgoing copyrights and character in the
19  copyright works it owns.
20              I think we have covered, your Honor, the
21  merchandise.  It is also, your Honor, our understanding
22  that this agreement is intended to be a complete, total,
23  final determination of any and all business or commercial
24  relationships between the parties.  And that the
25  plaintiffs enter into this agreement with no expectation

1   of any kind of any future income from Titan in the form of

2   royalties or elsewise.

3               I think Shawn covered dismissal with

4   prejudice of both this case and the case in Connecticut,

5   with each party to bear its own attorneys' fees and costs

6   in the timetable that I think he indicated.  And I think

7   that's it, Judge.

8        THE COURT:  Mr. Gilbert.

9        MR. GILBERT:  On confidentiality, I think, Shawn,

10  what you had indicated was simply that the terms of this

11  were covered by a confidentiality agreement.  I think we

12  ought to clarify that further and say what it is intended

13  to say.

14               Nondisclosure of the terms, any term of

15  conditions of this settlement, or what has been agreed

16  today other than the fact that the case has been settled

17  and the cases have been dismissed.

18        MR. AIKEN:  That's correct.

19        THE COURT:  And that confidentiality agreement

20  precludes either party from saying anything about the

21  agreement any further.  If you folks want to disclose

22  that, and you certainly don't have to, but I think you

23  ought to be able to say that, so you put the blame on me

24  for not letting you disclose it, if you want to do that.

25  The Court's not going to let you disclose the remainder of

1  the terms, period.  Anything further?

2          MR. GILBERT:  One thing, your Honor.  You indicated

3  that you were going to order the transcript of the

4  proceeding sealed, which is certainly understandable.

5          THE COURT:  After you folks each get a copy.

6          MR. GILBERT:  Right.  I wanted to make sure.

7          THE COURT:  No, I'm going to let you have a copy.

8          MR. GILBERT:  Just so it's on the record.  Thank

9  you.

10          MR. MURRAY:  The only disclosure I'd like to add to

11  Mr. McDevitt's comments with respect to the trademarks and

12  service marks concerning the Ultimate Warrior and Warrior

13  character is the Titan releases on to Warrior, formerly

14  Mr. Hellwig, and registrations thereof throughout the

15  world.

16          MR. MCDEVITT:  Do we still have them?

17          THE COURT:  If you have any, are you willing to

18  execute whatever documents are necessary to insure there's

19  no question about that?

20          MR. MCDEVITT:  I thought most of them were

21  transferred to him already.

22          MR. MURRAY:  My understanding is we have certain

23  problems in obtaining transfer registrations to

24  Mr. Hellwig or his company in countries like China and

25  Japan.

1        MR. MCDEVITT:  We have no problem with that, Judge.

2   I'm not aware of any.  If there are any, I assume you --

3        THE COURT:  The obligation would be with these

4   folks to provide the appropriate paperwork for the

5   releases.  And -- let me ask the plaintiffs first.

6           Mrs. Hellwig, is there anything you would

7   like to add for the record?

8        MRS. HELLWIG:  No.  Thank you for your time.

9        MR. HELLWIG:  No, sir.

10       THE COURT:  Mr. and Mrs. McMahon, is there anything

11   that you folks would like to add for the record?

12       MRS. MCMAHON:  No.

13       MR. MCMAHON:  I'm hungry.

14       THE COURT:  I think you definitely earned a good

15   dinner, all of you.

16       MR. AIKEN:  Thank you very much.

17       THE COURT:  Thank you.

18       MR. AIKEN:  I appreciate your time staying.

19       THE COURT:  You folks staying today set a new

20   record.

21       MR. MURRAY:  Thank you.

22

23               * * * * *

24

25

MICHAEL K. JEANES, CLERK
BY _____ DEP
FILED

2006 JAN -9 PM 5: 10

Daniel D. Maynard, No. 009211
Michael D. Curran, No. 012677
**MAYNARD CRONIN ERICKSON**
**CURRAN & SPARKS, P.L.C.**
1800 Great American Tower
3200 North Central Avenue
Phoenix, Arizona 85012
(602) 279-8500

Attorneys for Plaintiff

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Ultimate Creations, Inc., an Arizona corporation, Warrior and Dana Warrior, husband and wife, | CV2006-000364 |
| Plaintiffs, | **CERTIFICATE REGARDING COMPULSORY ARBITRATION** |
| v. | |
| Vincent K. McMahon and Linda McMahon, husband and wife; Titan Sports, Inc., a Connecticut corporation, World Wrestling Entertainment, a Connecticut corporation, | |
| Defendant. | |

The undersigned certifies that he knows the dollar limits and any other limitations set forth by the local rules of practice for the applicable superior court, and further certifies that this case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the Arizona Rules of Civil Procedure.

DATED this 9ᵗʰ day of January, 2006.

MAYNARD MURRAY CRONIN
ERICKSON & CURRAN, P.L.C.

By _____
Daniel D. Maynard
Michael D. Curran
1800 Great American Tower
3200 Central Avenue
Phoenix, Arizona 85012
Attorneys for Plaintiffs

MAYNARD CRONIN ERICKSON CURRAN & SPARKS, P.L.C.
Attorneys at Law
3200 NORTH CENTRAL AVENUE • SUITE 1800 • PHOENIX, ARIZONA 85012
TELEPHONE 602.279.8500 • FACSIMILE 602.263.8185