1   HEBERT, SCHENK & JOHNSEN, P.C.
    1440 E. Missouri Avenue
2   Missouri Commons Suite 125
    Phoenix, Arizona 85014
3   Telephone: (602) 248-8203
    Facsimile: (602) 248-8840
4
5   Shawn K. Aiken - 009002
    Philip R. Rupprecht - 009288
6
    HART, BAXLEY, DANIELS & HOLTON
7   59 John Street
    New York, New York 10038
8   Telephone: (212) 791-7200

9   Charles E. Baxley
    Joseph T. Murray
10  Ira Cohen

11  Attorneys for Plaintiffs WARRIOR
    and ULTIMATE CREATIONS, INC.

12

13              SUPERIOR COURT, STATE OF ARIZONA

14                    COUNTY OF MARICOPA

15

16  WARRIOR and ULTIMATE CREATIONS,        Cause No.    CV96-13377
    INC.,
17
                        Plaintiffs,
18                                          COMPLAINT
    V.
19                                          Jury Trial Demanded
    TITAN SPORTS, INC.; WORLD
20  WRESTLING FEDERATION; VINCENT K.
    McMAHON and LINDA McMAHON,
21  husband and wife; INTERNATIONAL
    PROMOTIONS, INC.; STANLEY
22  TORGERSON; MACFRUGALS BARGAINS
    CLOSE OUTS, INC.; and JOHN DOE 1-15,
23
                        Defendants.
24

25

26

27

28

1   Plaintiffs WARRIOR, and ULTIMATE CREATIONS, INC., by their attorneys Hebert, Schenk,
2   & Johnsen, P.C. and Hart, Baxley, Daniels & Holton, for their complaint allege:
3   **PARTIES:**

4   1.   Plaintiff WARRIOR (formerly known as James Hellwig and hereinafter referred to as
5   "WARRIOR") is an individual residing and doing business in the State of Arizona, County of Maricopa.

6   2.   Plaintiff ULTIMATE CREATIONS, INC. (hereinafter referred to as "ULTIMATE
7   CREATIONS") is a corporation duly organized under the laws of the State of Arizona, having its principal place
8   of business at 8711 East Pinnacle Peak Road, Scottsdale, Arizona 85255.  At all relevant times, ULTIMATE
9   CREATIONS was and is engaged in, among other things, a business of creating, producing, marketing,
10  merchandising, and otherwise commercially exploiting educational services in the field of wrestling as well as
11  a wide variety of products in the entertainment industry.

12  3.   Defendant TITAN SPORTS, INC., ("TITAN"), is upon information and belief, a corporation
13  organized and existing under the laws of the State of Connecticut, with a principal place of business at 1241 East
14  Main Street, Stamford, Connecticut 06902.  Upon information and belief, at all relevant times, TITAN was and
15  continues to be in a business of, among other things, producing, distributing, and otherwise commercially
16  exploiting entertainment services in the field of professional wrestling as well as a wide variety of products
17  related thereto.  Upon information and belief, and on that basis, plaintiffs allege that, TITAN regularly does
18  business in the State of Arizona and in this county and is subject to personal jurisdiction of the courts of this
19  State.

20  4.   Upon information and belief, defendant TITAN also conducts business under an assumed name
21  WORLD WRESTLING FEDERATION, ("WWF"), and for purposes of this complaint any references to
22  defendant TITAN will include WWF.

23  5.   Upon information and belief, TITAN is a privately-owned company controlled and operated by
24  Vincent K. McMahon ("McMAHON") and Linda McMahon, his wife (hereinafter sometimes referred to
25  collectively as "McMAHON"), who are, upon information and belief, individuals residing and doing business
26  in the State of Connecticut. Upon information and belief, and on that basis, plaintiffs allege that, at all relevant
27  times defendant McMAHON regularly does business in the State of Arizona and in this county and is subject to
28  the personal jurisdiction of the courts of this State.

6.     Defendant INTERNATIONAL PROMOTIONS, INC., ("INTERNATIONAL PROMOTIONS"), is upon information and belief, a corporation organized and existing under the laws of the State of Arizona, with a principal place of business at 1265 South Gilbert Road, Gilbert, Arizona 85296. Upon information and belief, at all relevant times, INTERNATIONAL PROMOTIONS was and continues to be in a business of, among other things, organizing, promoting,, and televising monster truck racing events as well as selling, distributing, and otherwise commercially exploiting a wide variety of related merchandising products to consumers. Upon information and belief, and on that basis, plaintiffs allege that INTERNATIONAL PROMOTIONS regularly does business in the State of Arizona and this county and is subject to the personal jurisdiction of the courts of this State.

7.     Defendant Stanley Torgerson ("TORGERSON") is, upon information and belief, an individual residing and doing business in the State of Arizona. Upon information and belief, and on that basis, plaintiffs allege that, at all relevant times defendant TORGERSON regularly does business in the State of Arizona and in this county and is subject to the personal jurisdiction of the courts of this State.

8.     Defendant MACFRUGALS BARGAINS CLOSE OUTS, INC., ("MACFRUGALS"), is upon information and belief, a corporation organized and existing under the laws of the State of California, with a principal place of business at various locations in the City of Phoenix, State of Arizona, including 3144 East Thomas Road, 5010 West Indian School Road, and 3213 East Cactus Road. Upon information and belief, at all relevant times, MACFRUGALS was and continues to be in a business of, among other things, selling, distributing, and otherwise commercially exploiting a wide variety of merchandising products to consumers. Upon information and belief, and on that basis, plaintiffs allege that, defendant MACFRUGALS regularly does business in the State of Arizona and in this county and is subject to personal jurisdiction of the courts of this State.

9.     Plaintiffs are ignorant of the true names and capacities of defendants named herein as Doe 1 through 15 (hereinafter "DOE 1-15"), inclusive, and therefore sue said defendants by such fictitious names. The plaintiffs seek leave of court to amend this complaint to show true names of DOE 1-15 and capacities thereof, when they have been ascertained. Plaintiffs are informed and believe, and on that basis allege that at all times relevant hereto, each of the defendants designated as DOE 1-15 is responsible in some manner for the events and happenings referred to herein. Upon information and belief, DOE 1-15 regularly do business in the State of Arizona and in this county and are subject to personal jurisdiction of the courts of this State.

10.     Plaintiffs are informed and believe, and on that basis, allege that at all times relevant hereto, all of the foregoing defendants, whether named or unnamed, were agents, licensees, distributors, employees, co-venturers, partners, principals, and/or co-conspirators of each other, and at all relevant times were acting within the course and scope of said capacities.

**BACKGROUND**:

11.     WARRIOR is a world famous professional wrestler and creator, producer, and innovator in many forms of multi-media entertainment. Among WARRIOR's enterprises are WARRIOR UNIVERSITY (a training school for persons seeking careers in professional wresting), WARRIOR'S WORLD (a mail order service featuring merchandise and souvenirs), WARRIOR comic book (a publication featuring the WARRIOR character in a fight of good against evil); and WARRIOR fantasy camp (where professional wrestlers are invited to train with amateur athletes). WARRIOR also organizes and participates in a public speaking campaign under a theme ALWAYS BELIEVE. Through the ALWAYS BELIEVE campaign, WARRIOR encourages children and young adults to "live the life in the way of a warrior" and to abstain from reckless behavior and violence. The ALWAYS BELIEVE campaign is comprised of eight disciplines for living a life of self-empowerment. Many of these themes also are a central theme promoted in WARRIOR's series of comic books.

12.     On February 19, 1996, WARRIOR and defendant TITAN entered into a contract whereby WARRIOR agreed to provide professional wrestling services to TITAN and WWF for a term of eighteen (18) months. In exchange for said services, TITAN agreed to pay WARRIOR cash compensation of not less than One Million Dollars ($1,000,000.00) as well as assignment of certain intellectual property rights concerning WARRIOR and ULTIMATE WARRIOR trademarks and service marks and registrations thereof. Under the Agreement, TITAN also agreed to pay WARRIOR certain other non-cash compensation, including participation in development and operation of a training academy for professional wrestling and a series of comic books featuring a lead character resembling plaintiff WARRIOR. The Agreement also provided for TITAN and WARRIOR to mutually plan a Warrior World Tour as well as merchandising of products and services under a designation "Warrior World". Said Agreement is attached, marked as Exhibit B, and incorporated herein by reference.

4

13.     Prior to WARRIOR's return to professional wrestling at Wrestlemania XII on March 31, 1996, WARRIOR long had been a world renowned professional wrestler and entertainer.  WARRIOR and TITAN previously had been parties to two other agreements under which WARRIOR provided professional wrestling services to TITAN for commercial exploitation.

14.     From 1987 to early 1991, WARRIOR and his counterpart, HULK HOGAN, were considered by their peers and by wrestling fans to be the top performers in the wrestling industry.  During his career, WARRIOR has portrayed a "good guy" character and long has been perceived as such by wrestling fans.  WARRIOR is recognized throughout the world as the first wrestler to have pinned HULK HOGAN in a match-up of "good guy versus good guy".  During the aforementioned period and continuing until the present, WARRIOR merchandising items have been top sellers for TITAN and have contributed significantly to success of TITAN and the WWF after retirement of HULK HOGAN in approximately 1992.

15.     It was during the course of the first agreement between WARRIOR and TITAN that, in or about August 1990, relations between WARRIOR and TITAN began to deteriorate.  For a period of 6-7 months in late 1990, TITAN and its principal agent, Vincent K. McMAHON, compelled WARRIOR to work an average of 27 days per month at WWF tapings, live performances and appearances.  During that 6 months, WARRIOR was kept on the road by TITAN and not permitted to return home to attended to family matters even though WARRIOR had requested to do so.  Moreover, although TITAN had agreed to increase compensation to WARRIOR as a condition of WARRIOR's continued service to TITAN and WWF, TITAN later reneged on its agreements and wrongfully terminated WARRIOR's contract.

16.     Approximately eight (8) months after WARRIOR's forced departure from the WWF, in spring of 1992, defendants McMAHON and TITAN sought return of WARRIOR to professional wrestling.  Upon information and belief, a principal reason for change of heart by McMAHON and TITAN was due to intense consumer demand for WARRIOR related products and favorable recognition of WARRIOR among wrestling fans.  As partial consideration for WARRIOR's return to wrestling, McMAHON and TITAN agreed that WARRIOR would be entitled to pursue other personal business ventures during his term with the WWF.

17.     Shortly after WARRIOR's return to the WWF, a federal grand jury indicted McMAHON for allegedly requiring WWF wrestlers to use anabolic steroids.  At that time, McMAHON told WARRIOR that it was McMAHON's intention to introduce to the WWF a different style of wrestling oriented toward development

1   of fictional characters and storylines rather than bodybuilders and fantasy characters. However, the second
2   relationship between WARRIOR and TITAN quickly soured a month later when WARRIOR requested that
3   McMAHON and TITAN formalize in a written contract agreements which had been reached between the parties.
4   When WARRIOR presented TITAN with a written contract to the foregoing effect, McMAHON and TITAN
5   refused to honor their commitments to WARRIOR and terminated its relationship with WARRIOR. As a
6   purported reason for said termination, McMAHON and TITAN, upon information and belief, disseminated false
7   accusations that WARRIOR was part of an alleged international conspiracy to import anabolic steroids in to the
8   United States.

9       18.     For a third time, in January 1996, McMAHON personally approached WARRIOR to negotiate
10  WARRIOR's return to the WWF at Wrestlemania XXII. At that time, McMAHON and TITAN assured
11  WARRIOR that WARRIOR would be the featured wrestler among WWF wrestlers. McMAHON and TITAN
12  also agreed that they would participate in several of WARRIOR's business ventures, including development and
13  operation of Warrior University.

14      19.     From April to mid-June 1996, WARRIOR wrestled at approximately 40 wrestling events in
15  various cities throughout the United States and Canada. During that time, WARRIOR repeatedly requested that
16  TITAN fulfill commitments that McMAHON and TITAN had made concerning business ventures of plaintiffs,
17  however, McMAHON and TITAN merely stalled and delayed. During this time WARRIOR also disclosed in
18  confidence to McMAHON and several other representatives of TITAN, including its President, Linda McMahon,
19  plans which WARRIOR had developed respecting his ALWAYS BELIEVE project and other related business
20  ventures. During said meetings, Linda McMahon and TITAN's marketing director, Jim Bell, assured WARRIOR
21  that all such ideas and projects of WARRIOR would be held in strict confidence and trust and would not be
22  disclosed to anyone unless TITAN had been authorized to so do by WARRIOR.

23      20.     In spite of TITAN's repeated assurances of confidentiality to WARRIOR, TITAN commenced
24  widespread use of many of plaintiffs' ALWAYS BELIEVE concepts, including extensive exploitation at an
25  annual trademark licensing convention in New York City during the week of June 26, 1996. In an apparent effort
26  to conceal defendant TITAN's misappropriation of WARRIOR's business proposals, representatives of TITAN,
27  including Vince and Linda McMahon and Jim Bell, requested that WARRIOR not attend the licensing
28  convention which WARRIOR regularly had attended in prior years during his employment with TITAN.

21.     Having suspected that wrongdoing by TITAN and McMAHON was afoot, WARRIOR flew immediately to New York City on June 28, 1996 to attend the licensing show and found that TITAN and McMAHON blatantly had broken its promise not to reveal or use plaintiffs' ALWAYS BELIEVE concepts. At the same time, WARRIOR also learned that his father was terminally ill and near death. WARRIOR immediately telephoned Linda and Vince McMahon to discuss issues concerning abuses at the licensing show as well as WARRIOR's need to attend to exigent concerns of his family. On the evening of June 28th, McMAHON and TITAN were well aware that WARRIOR needed to attend to family matters and that WARRIOR could not wrestle at WWF events that evening (Pittsburgh) and on the following Saturday (Indianapolis) and Sunday (Detroit).

22.     Notwithstanding prior knowledge of WARRIOR's intention not to wrestle during the weekend of June 28-30, when WWF matches commenced in Pittsburgh on Friday, June 28th, representatives of TITAN announced to the audience that WARRIOR had "refused to wrestle." Similar announcements also were made during matches on Saturday and Sunday June 29th and 30th. Actions by TITAN and McMAHON were intended to defame and disparage reputation of WARRIOR by creating an impression that WARRIOR did not like fans in Pittsburgh, Indianapolis and Detroit.

23.     On the following Monday, July 1st, during a nationwide telecast called "Monday Night Raw," representatives of TITAN, namely a fictitious President of the WWF called "Gorilla Monsoon," announced to television viewers and fans that WARRIOR had been "suspended from wrestling" and would not be permitted to return to the WWF unless WARRIOR posted a $250,000.00 bond. TITAN and McMAHON also disseminated similar false and disparaging information over a call-in telephone service as well as the American On-Line computer network. The foregoing acts by McMAHON and TITAN were a flagrant repudiation of the Agreement as well as an intentional conspiracy to disparage and defame reputation of plaintiffs.

**PLAINTIFFS' SERVICE MARKS AND TRADEMARKS:**

24.     Plaintiffs WARRIOR and ULTIMATE CREATIONS sell goods and render services under trademarks, service marks and trade names including, but not limited to, "WARRIOR," "ULTIMATE WARRIOR," "ALWAYS BELIEVE" and "WARRIOR'S WORLD" as well as certain logo designs used in connection with all of the foregoing marks (hereinafter collectively referred to as the "WARRIOR marks" and/or

1  the "marks"). Plaintiffs' marks are inherently distinctive, and have been used extensively, advertised and
2  promoted throughout the United States and the world in connection with plaintiffs' wrestling and wrestling-
3  related goods and services as well as many other goods and services which emanate from plaintiffs. Substantial
4  amounts of money have been spent in establishing this affiliation so that consumers recognize the WARRIOR
5  marks as identifying plaintiffs and the quality goods and services that they offer under the WARRIOR marks.
6       25.      ULTIMATE CREATIONS is owner of the following relevant trademark and service mark
7  registrations throughout the world:

| COUNTRY | (Class) | SERIAL NO./ REG. NO. | | MARK |
|---|---|---|---|---|
| Belgium | 16 | Reg | 503,014 | ULTIMATE WARRIOR |
| Canada | | Reg | 417,315 | ULTIMATE WARRIOR |
| China | 28 | Reg | 633,799 | ULTIMATE WARRIOR |
| China | 41 | Reg | 722,218 | ULTIMATE WARRIOR |
| France | 16 | Reg | 1,704,494 | ULTIMATE WARRIOR |
| Germany | 9 | Reg | 2,083,539 | ULTIMATE WARRIOR |
| Israel | 25 | Reg | 88,087 | ULTIMATE WARRIOR |
| Israel | 28 | Reg | 84,201 | ULTIMATE WARRIOR |
| Israel | 41 | Reg | 84,204 | ULTIMATE WARRIOR |
| Italy | 28 | Reg | 610,480 | ULTIMATE WARRIOR |
| Italy | 16 | Reg | 634,448 | ULTIMATE WARRIOR |
| Japan | 28 | Reg | 3,119,047 | ULTIMATE WARRIOR |
| Japan | 41 | SN | 4-310962 | ULTIMATE WARRIOR |
| Japan | 28 | SN | 4-310975 | ULTIMATE WARRIOR |
| Mexico | 41 | Reg | 426,344 | ULTIMATE WARRIOR |
| United Kingdom | 9 | Reg | 1,462,109 | ULTIMATE WARRIOR |
| United Kingdom | 25 | Reg | 1,462,111 | ULTIMATE WARRIOR |
| United Kingdom | 41 | Reg | 1,462,112 | ULTIMATE WARRIOR |
| United Kingdom | 16 | Reg | 1,462,110 | ULTIMATE WARRIOR |
| United States | 16 | Reg | 1,625,919 | ULTIMATE WARRIOR |
| United States | 16 | Reg | 1,708,155 | WARRIOR |

| United States | 20 | Reg | 1,708,236 | WARRIOR |
| United States | 28 | Reg | 1,775,325 | ULTIMATE WARRIOR & DESIGN |
| United States | 9 | Reg | 1,818,813 | ULTIMATE WARRIOR |
| United States | 28 | Reg | 1,838,771 | ULTIMATE WARRIOR |
| United States | 16 | SN | 75/112966 | ALWAYS BELIEVE |
| United States | 42 | SN | 75/112954 | WARRIOR'S WORLD |

26.     Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have had constructive notice and knowledge of plaintiffs' trademark and service mark rights and, in fact, TITAN has had actual knowledge of many of plaintiffs' marks in that TITAN was predecessor-in-interest to certain of the WARRIOR marks having assigned same to ULTIMATE CREATIONS on May 16, 1996.

27.     As a result of long use and extensive advertising and promotion of plaintiffs' WARRIOR marks, said marks have become well and favorably known throughout Arizona, the United States and the world.

28.     Plaintiffs are informed and believe, and based on such information and belief allege, that since long prior to any acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 complained of in this complaint, and by virtue of the foregoing widespread use, promotion and recognition of the WARRIOR marks, plaintiffs have acquired a valuable commercial magnetism, a distinctive and secondary meaning signifying plaintiffs themselves and the goods and services provided by plaintiffs.

29.     On information and belief, from the date of defendant TITAN's breach of the Agreement and revocation of trademark license thereunder, defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have engaged in a systematic pattern of intentional trade dress infringement, service mark, trademark and trade name infringement, dilution and unfair competition.

30.     Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have had actual knowledge of plaintiffs, their products, reputation, trading style, trade dress, service marks, trademarks and trade name. Defendants also know that their use and commercial exploitation of WARRIOR marks is without authorization or consent by plaintiffs.