1   Agreement and from the date libelous statements were made by said plaintiffs. WARRIOR also has suffered

2   headaches, insomnia and other physical conditions as a result of the severe emotional distress caused by negligent

3   conduct of said defendants.

4       87.   By reason of the foregoing negligent acts and a direct and proximate result of the disabling injuries

5   sustained by the plaintiffs, plaintiffs were damaged in an amount to be proven at trial.

6   ELEVENTH CAUSE OF ACTION

7   FRAUDULENT INDUCEMENT OF CONTRACT

8       88.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-87, inclusive,

9   and the acts of defendants asserted in those paragraphs, as if here set forth in full.

10       89.   During the course of negotiations of the Agreement between WARRIOR and TITAN,

11   McMAHON and TITAN represented to plaintiffs that TITAN was committed to developing a business plan as

12   well as providing on a continuous basis during the 18-month term of the Agreement an advertising and marketing

13   program for WARRIOR University and other business ventures of plaintiffs. During said negotiations

14   McMAHON and TITAN further represented to plaintiffs that TITAN would provide advertising in Titan-

15   sponsored magazines and television programs for purposes of promoting plaintiffs' WARRIOR comic book as

16   well as plan a Warrior World Tour. All of the foregoing representations, as well as other representations,

17   misrepresentations and concealments, were made by McMAHON and TITAN in order to induce WARRIOR to

18   enter into the Agreement and to provide professional wrestling and other services to TITAN thereunder.

19       90.   The above described representations were false when McMAHON and TITAN made them in that

20   said defendants knew that TITAN would obtain benefits from WARRIOR's professional wrestling services as

21   well as licenses to use WARRIOR trademarks while defendants concealed their intention to terminate the

22   Agreement without paying full compensation rightfully due and owing to plaintiffs.

23       91.   Defendants McMAHON and TITAN knew that the foregoing representations were false when

24   defendant made them.

25       92.   Defendants McMAHON and TITAN made the foregoing false representations and concealed other

26   material facts with an intent and for a purpose of deceiving WARRIOR and to induce plaintiffs to rely on said

27   representations.

28

19

93. By reason of the foregoing fraudulent acts by defendants McMAHON and TITAN, plaintiffs were damaged in an amount to be proven at trial.

### TWELFTH CAUSE OF ACTION

### TRADEMARK AND SERVICE MARK INFRINGEMENT

### UNDER ARIZONA REV. STAT. §§44-1451-52

94. Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-93, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

95. Above averred acts concerning use and exploitation of WARRIOR marks by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute infringement of plaintiffs' trademarks and service marks in violation of Arizona Revised Statute, sections 44-1451 and/or 44-1452.

### THIRTEENTH CAUSE OF ACTION

### TRADE NAME INFRINGEMENT

### UNDER ARIZ. REV. STAT. §44-1460.04

96. Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-95, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

97. Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute trade name infringement in violation of Arizona Revised Statute, section 44-1460.04.

### FOURTEENTH CAUSE OF ACTION

### USE OF A COUNTERFEIT LABEL, TRADEMARK OR ADVERTISEMENT

### UNDER ARIZ. REV. STAT. §44-1453

98. Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-97, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

99. Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute counterfeiting or use of a counterfeit of a label, trademark or form of advertisement adopted by a corporation in violation of Arizona Revised Statute, section 44-1453.

1

2

3

## FIFTEENTH CAUSE OF ACTION

## TRADEMARK COUNTERFEITING AND PASSING OFF

## UNDER ARIZ. REV. STAT. §44-1454

4    100.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-99, inclusive,

5    and the acts of defendants asserted in those paragraphs, as if here set forth in full.

6    101.   Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS,

7    TORGERSON, MACFRUGALS and DOE 1-15 constitute a knowing reproduction, copying, forging,

8    counterfeiting and/or imitation of a trademark affixed to goods with an intent on said defendants' part to pass off

9    goods as those of plaintiffs in violation of Arizona Revised Statute, section 44-1454.

## SIXTEENTH CAUSE OF ACTION

## SALE OF COUNTERFEIT GOODS

## UNDER ARIZ. REV. STAT. §44-1455

10

11

12

13    102.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-101,

14    inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

15    103.   Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS,

16    TORGERSON, MACFRUGALS and DOE 1-15 constitute a knowing sale or keeping for sale of goods upon or

17    to which a counterfeit trademark is affixed with an intention to represent such goods as genuine goods of

18    plaintiffs when, in fact, said defendants knew or should have know said trademark to be counterfeit.

## SEVENTEENTH CAUSE OF ACTION

## COMMON LAW UNFAIR COMPETITION

19

20

21    104.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-103,

22    inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

23    105.   Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS,

24    TORGERSON, MACFRUGALS and DOE 1-15 constitute trademark infringement, unfair competition and

25    passing off in violation of the common law of the State of Arizona.

26

27

28

AUG 30 '96  03:52PM

## EIGHTEENTH CAUSE OF ACTION
## DECEPTIVE BUSINESS PRACTICES
## UNDER ARIZ. REV. STAT. §13-2202

106.    Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-105, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

107.    Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute deceptive business practices under Arizona law in that said defendants represented to the public that goods and services being sold or offered for sale under the WARRIOR marks were goods and services emanating from another person when in fact they did not and do not so emanate.

## NINETEENTH CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

108.    Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-107, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

109.    Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, BAGGUS, MACFRUGALS and DOE 1-15 constitute tortious interference with contractual relationships of plaintiffs.

WHEREFORE, plaintiffs pray as follows:

A.     Permanently enjoin and restrain defendants, their officers, directors, agents, servants, employees, successors and assigns, and all those in active concert or participation with them from:

(1)    engaging in any merchandising activity, including sale of, the offering for sale, or the distribution of gifts; novelties; games; toys; apparel; accessories; stationery; home furnishings; publishing; comic books; paperback books; hard cover books; greeting cards; calendars; food; plush or vinyl dolls; figurines; ceramics; keychains; pens; pencils; watches; hats; caps; gift wrap; decorations; invitations; holograms; magnets; posters; playing cards; balloons; stickers; wallpaper; temporary taboos; party goods; napkins; tablecloths; cups; mugs; ornaments; collectibles; cells; erasers; computer games; home video; all audio formats; CD-ROM; cable and satellite delivery; or other merchandising

22

AUG 30 '96  02:50PM

1 activity regarding the WARRIOR marks and any other trademark, service mark,

2 tradename, copyright, persona or commercial impression of plaintiffs; the plaintiff

3 WARRIOR, and/or any likeness thereof, that constitutes unfair competition or

4 infringement of any of plaintiffs' said rights, or of plaintiffs' exclusive right to exploit any

5 of the foregoing;

6 (2) engaging in any activity constituting misappropriation or unfair competition or

7 constituting infringement of any of plaintiffs' trademarks, service marks, trade names,

8 copyrights, persona or commercial impression, or other similar rights, or of plaintiffs'

9 rights in, or to use or exploit, any of the foregoing;

10 (3) misappropriating and infringing plaintiffs' trademarks, service marks, trade names,

11 copyrights, or other similar rights in any manner and from reproducing, distributing,

12 exhibiting or otherwise disseminating any advertisements containing such infringing

13 material;

14 (4) making any statement or representation whatsoever, or using any false designation

15 of origin or false description (including without limitation, any works or symbols), or

16 performing any act, which can, or is likely to, lead the trade or public, or individual

17 members thereof, to believe that any product manufactured, reproduced, distributed,

18 exhibited or sold by defendants is in any manner associated or connected with plaintiffs

19 WARRIOR or ULTIMATE CREATIONS, or is sold, manufactured, licensed, affiliated,

20 approved or authorized thereby; and

21 (5) otherwise using any creations or proprietary information of plaintiffs WARRIOR

22 or ULTIMATE CREATIONS for any commercial purpose whatsoever.

23 B. Entering a judgment rescinding the licensing agreement entered into between WARRIOR

24 and TITAN on February 19, 1996 and enjoining defendants, and anyone acting on behalf of or in concert

25 therewith, from selling or otherwise commercially exploiting, at any location within this State and throughout

26 the United States and the world any goods and services under plaintiffs' WARRIOR marks as well as any other

27 marks which are confusingly similar thereto.

28

AUG 30 '96   02:50PM

C.   Requiring defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to pay plaintiffs:

(1)   such damages as plaintiffs have sustained as a consequence of defendants' trademark, service mark, trade name and other infringements and unfair competition;

(2)   all gains, profits and advantages derived by defendants by reason of said infringements, unfair competition and dilution;

(3)   all gains, profits and advantages derived by defendants by virtue of their infringements, or such damages as to the court shall appear proper within the provisions of the applicable laws;

D.   Requiring defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to grant plaintiffs a complete accounting of said defendants' documents, books, contracts, and records concerning all merchandising revenue derived from sale of goods and services under plaintiffs' WARRIOR marks and any mark confusingly similar therewith and to require defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to provide copies of all agreements entered into with third parties concerning sale or offering for sale of such goods and services.

E.   For acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 averred in plaintiffs' claims SECOND THROUGH and including NINETEENTH, awarding to plaintiffs compensatory damages, in an amount to be proven at trial.

F.   For acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 averred in plaintiffs' claims SECOND THROUGH and including NINETEENTH, awarding to plaintiffs punitive damages, in an amount to be proven at trial.

G.   Awarding to plaintiffs the costs and disbursements of this action together with their reasonable attorneys' fees.

H.   Awarding to plaintiffs such other and further relief as the court deems just and proper.

I.   Plaintiffs WARRIOR and ULTIMATE CREATIONS, INC. hereby demand trial by jury herein.

AUG 30 '96  02:50PM

HEBERT, SCHENK & JOHNSEN, P.C.

By

DATED: August 28, 1996.

Shawn K. Aiken
Philip R. Rupprecht
1440 E. Missouri, Suite 125
Phoenix, AZ 85014
  Attorneys for Plaintiffs

I:\WARRIOR\COMPLAIN.WPD

AUG 30 '96 02:50PM

# EXHIBIT "A"

AUG 30 '96  02:50PM

# HART, BAXLEY, DANIELS & HOLTON

JOHN J. HART
CHARLES K. BAXLEY
—————
INA COHEN
JOSEPH T MURRAY
KEVIN P. O'MALLEY
LEON E. TENENBAUM

58 JOHN STREET
NEW YORK, N. Y. 10038
TELEPHONE: (212) 791-7200

OF COUNSEL
—————
THOMAS F FARLEY
LEO FORNERO

CABLE: LEVEDAK
TELFA: 888881
TELEGRAM: (212) 791-7878

July 23, 1996

<u>VIA TELECOPIER & MAIL</u>
(203) 352-8699

Ms. Linda E. McMahon
President & COO
Titan Sports, Inc.
1241 East Main Street
Stamford, CT 06902

Dear Linda:

My reference 7891 B
<u>Titan Sports, Inc. v. WARRIOR</u>

Your letter to me dated July 19, 1996 has been received.
I view your July 19th letter as posturing in an attempt to downplay
Titan's imprudent actions and breach of contract with WARRIOR. I
will here address each of your positions in turn.

Titan's allegation that WARRIOR fraudulently induced
Titan to enter into a January, 1996 Agreement is fiction. WARRIOR
has acted in good faith with Titan and has performed in Titan
events for more than four (4) months following execution of the
Agreement. He opened Warrior University and otherwise cooperated
in his return to World Wrestling Federation. Until your July 19th
letter Titan had not mentioned any alleged fraud.

With respect to WARRIOR and ULTIMATE WARRIOR trademarks
and service marks, etc., you are correct in stating that ownership
of the marks was transferred to WARRIOR. When Titan repudiated its
Agreement with WARRIOR and prevented WARRIOR from performing
thereunder, by Titan's action, all trademark licenses from WARRIOR
to Titan terminated. Accordingly, Titan must cease forthwith and
thereafter desist from further use of said marks. Provide me with
a complete report of all uses of WARRIOR and/or ULTIMATE WARRIOR
marks by Titan and/or its licensees from July 1 to the present so
that I may prepare an appropriate invoice for royalties due to
WARRIOR.

You have stated that, following execution of the
Agreement, "problems began to develop with Mr. Hellwig and his
performance of the contract." I am unaware of problems to which
you refer. If you consider positions set forth by WARRIOR during
negotiations of a long form contract to be "problems", then Titan's
anxiety seems to have been caused by Titan's own doing. I have
been an intellectual property attorney for almost 40 years and I
can tell you from my experience that Titan's proposed long form

AUG 30 '96  02:50PM

HART, BAXLEY, DANIELS & . JLTON

Ms. Linda E. McMahon
Titan Sports, Inc.

July 23, 1996
Page 2

My reference 7891 B
Titan Sports, Inc. v. WARRIOR

agreement is more oppressive than any that I have ever seen. Concerns raised by WARRIOR during contract negotiations precipitated from an oppressive and outrageous concoction of the long form agreement. In my view Titan could have avoided dispute with WARRIOR if Titan had put forth a proposed agreement which was reasonable and respectful of interests of both parties.

You have described Titan's suspension of WARRIOR and demand for a $250,000.00 performance bond as necessary for adequate assurance of WARRIOR's performance. I view those demands in a completely different light and I communicated to you thereon in my letter to you of July 8th. The Agreement then in force between Titan and WARRIOR contains no provisions related to a performance bond and/or suspension. If Titan needed assurance regarding WARRIOR's appearance, a logical remedy for Titan was either to obtain cast insurance or complete a long form agreement which could address those issues. Instead, Titan demanded from WARRIOR things which WARRIOR had no obligation to provide.

An adequate assurance of performance is by definition a request that a party provide a promise of due performance under a contract. It is not an opportunity for one of the parties to modify unilaterally terms of the contract and to demand something from the other party which was not previously agreed to. Again, the Agreement then in force between Titan and WARRIOR contained no provisions whereby WARRIOR would have been required to produce a $250,000.00 bond as a condition for Titan's performance thereunder. By so demanding, Titan repudiated the Agreement making it impossible for WARRIOR to honor his commitments to Titan. When I suggested to you and Jerry McDevitt, Esq. that Titan would be wise to reconsider its demands, Titan seemed to become even more entrenched in its position. Now you have gone too far-- over the edge.

Linda, you are intelligent and pleasant person to deal with. I regret that our mutual efforts did not work out as well as we had hoped. Apart from the present situation, I wish you the best.

Cordially,

Charles E. Baxley

CEB:pa/corr/McMahon.7891B