John T. Gilbert, #004555
Steven G. Ford, #016492
**ALVAREZ & GILBERT PLLC**
14500 N. Northsight Blvd. Ste. 216
Scottsdale, AZ 85260
(602) 263-0203 (phone)
(480) 686-8708 (facsimile)

Of Counsel:
Jerry S. McDevitt, Esq., Pro hac vice
Curtis B. Krasik, Esq., Pro hac vice
Amy L. Barrette, Esq., Pro hac vice
**KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP**
Henry W. Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania  15222
(412) 355-6500 (phone)
(412) 355-6501 (facsimile)

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ULTIMATE CREATIONS, INC., an Arizona corporation; WARRIOR and DANA WARRIOR, husband and wife,<br><br>    Plaintiffs,<br>  vs.<br><br>VINCENT K. McMAHON and LINDA McMAHON, husband and wife; TITAN SPORTS, INC., a Connecticut corporation; WORLD WRESTLING ENTERTAINMENT, INC., a Connecticut corporation,<br><br>    Defendants. | Case No.  CV06-0535-PHX-ROS<br><br>**DEFENDANTS' ANSWER TO PLAINTIFFS' FIRST AMENDED COMPLAINT, AFFIRMATIVE DEFENSES & COUNTERCLAIM** |
| VINCENT K. McMAHON and LINDA McMAHON, husband and wife; TITAN SPORTS, INC., a Connecticut corporation; | |

WORLD WRESTLING ENTERTAINMENT, INC., a Connecticut corporation,

    Counterclaim-Plaintiffs,

 vs.

WARRIOR,

    Counterclaim-Defendant.

Defendants Vincent K. McMahon, Linda McMahon, Titan Sports, Inc. and World Wrestling Entertainment, Inc. (collectively "WWE"), by and through their undersigned counsel, respectfully submit this Answer to Plaintiffs' First Amended Complaint, Affirmative Defenses and Counterclaim.

**PARTIES, JURISDICTION, AND VENUE**

1. The allegations set forth in Paragraph 1 are denied, except it is admitted that Ultimate Creations, Inc. was a party to a prior lawsuit captioned *Warrior & Ultimate Creations, Inc. v. Titan Sports, Inc., et al.,* CV96-15377 (the "Prior Action") and was a party to a Settlement Agreement and Mutual Release entered into as of March 3, 2000 in that lawsuit (the "Settlement Agreement").

2. WWE is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2.

3. The allegations set forth in Paragraph 3 are admitted.

2

4. The allegations set forth in Paragraph 4 are denied, except it is admitted that Titan Sports, Inc. was a party to the Prior Action and was a party to the Settlement Agreement.

5. The allegations set forth in Paragraph 5 are denied.

6. The allegations set forth in Paragraph 6 constitute legal conclusions to which no response is required.

7. The allegations set forth in Paragraph 7 constitute legal conclusions to which no response is required.

**GENERAL ALLEGATIONS**

8. The allegations set forth in Paragraph 8 are admitted.

9. The allegations set forth in Paragraph 9 are admitted.

10. The allegations set forth in Paragraph 10 constitute legal conclusions to which no response is required. To the extent a response is deemed necessary, those allegations are denied.

11. The allegations set forth in Paragraph 11 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied. By way of further response, it is admitted that the Settlement Agreement was to be confidential and that the parties agreed not to disparage one another at any time in any media.

12. The allegations set forth in Paragraph 12 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied. By way of further response, it is admitted that the parties agreed that Titan was the owner of the Ultimate Warrior and Warrior character depicted in Titan's copyrighted works and in works which record or depict the Ultimate Warrior character which James Hellwig (now known as Warrior) performed with Titan, and Titan had all rights to depict those copyrighted works in any and all media.

13. The allegations set forth in Paragraph 13 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied. By way of further response, it is admitted that the parties agreed that Warrior had the right to perform the Ultimate Warrior character in the future in any and all manner.

14. The allegations set forth in Paragraph 14 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied. By way of further response, it is admitted that the Settlement Agreement provided that Warrior owns the trademarks and service marks to Ultimate Warrior and Warrior characters but Titan shall continue to have the right of fair use of the marks and any and all other rights afforded to it as a result of its ownership of, and rights to exploit, its copyrights and character in the copyrighted works it owns depicting the Ultimate Warrior and Warrior character.

15. The allegations set forth in Paragraph 15 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the

terms of the written record are denied.  By way of further response, the allegations set forth in Paragraph 15 are denied as stated.

16. The allegations set forth in Paragraph 16 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied.  By way of further response, the allegations set forth in Paragraph 16 are denied as stated.

17. The allegations set forth in Paragraph 17 refer to a written record that speaks for itself and, therefore, all allegations that interpret or otherwise characterize the terms of the written record are denied.  By way of further response, it is admitted that the parties agreed not to disparage one another in any media.

18. The allegations set forth in Paragraph 18 are admitted.

19. The allegations set forth in Paragraph 19 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

20. The allegations set forth in Paragraph 20 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

21. The allegations set forth in Paragraph 21 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

5

22. The allegations set forth in Paragraph 22 are denied.

## First Claim For Relief

### (Breach of Contract)

23. WWE's foregoing responses are incorporated herein by reference and reasserted as though fully set forth at length.

24. The allegations set forth in Paragraph 24 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

25. The allegations set forth in Paragraph 25 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

## Second Claim For Relief

### (Defamation)

26. WWE's foregoing responses are incorporated herein by reference and reasserted as though fully set forth at length.

27. The allegations set forth in Paragraph 27 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

28.     The allegations set forth in Paragraph 28 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

29.     The allegations set forth in Paragraph 29 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

**Third Claim For Relief**

**(False Light)**

30.     WWE's foregoing responses are incorporated herein by reference and reasserted as though fully set forth at length.

31.     The allegations set forth in Paragraph 31 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

32.     The allegations set forth in Paragraph 32 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

33.     The allegations set forth in Paragraph 33 constitute legal conclusions to which no response is required.  To the extent a response is deemed necessary, those allegations are denied.

## Fourth Claim For Relief

### (Declaratory Judgment Action)

34. WWE's foregoing responses are incorporated herein by reference and reasserted as though fully set forth at length.

35. The allegations set forth in Paragraph 35 are denied.

36. The allegations set forth in Paragraph 36 constitute legal conclusions to which no response is required. To the extent a response is deemed necessary, those allegations are denied.

### FIRST AFFIRMATIVE DEFENSE

37. Plaintiffs' First Amended Complaint fails to state any claims upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

38. Plaintiffs' claims are barred, in whole or in part, by Warrior's prior breach of the Settlement Agreement.

### THIRD AFFIRMATIVE DEFENSE

39. Plaintiffs' claims are barred, in whole or in part, by waiver.

### FOURTH AFFIRMATIVE DEFENSE

40. Plaintiffs' claims are barred, in whole or in part, by estoppel.

### FIFTH AFFIRMATIVE DEFENSE

41. Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

42. Plaintiffs' claims are barred, in whole or in part, by laches.

### SEVENTH AFFIRMATIVE DEFENSE

43. Plaintiffs' claims are barred, in whole or in part, by issue and/or claim preclusion.

### EIGHTH AFFIRMATIVE DEFENSE

44. Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations.

### NINTH AFFIRMATIVE DEFENSE

45. Plaintiffs' claims are barred, in whole or in part, because the allegedly defamatory statements are true.

### TENTH AFFIRMATIVE DEFENSE

46. Plaintiffs' claims are barred, in whole or in part, by the fair comment privilege.

## ELEVENTH AFFIRMATIVE DEFENSE

47. Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the United States Constitution.

## TWELFTH AFFIRMATIVE DEFENSE

48. Plaintiffs' claims are barred, in whole or in part, because Warrior is libel-proof.

## THIRTEENTH AFFIRMATIVE DEFENSE

49. Plaintiffs' claims are barred, in whole or in part, by consent.

50. Defendants have been required to engage counsel to defend this action which arises out of contract and, therefore, Defendants are entitled to recover from Plaintiff their reasonable attorneys' fees herein incurred pursuant to the provisions of A.R.S. §12-341.01.

WHEREFORE, having fully answered the Amended Complaint, Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint with prejudice that the Court award Defendants their reasonable attorneys' fees and costs herein incurred, and that the Court grant any other relief that the Court deems just and appropriate.

## COUNTERCLAIM

Counterclaim-Plaintiffs, Vincent K. McMahon, Linda McMahon, Titan Sports, Inc., and World Wrestling Entertainment, Inc., allege the following Counterclaim against Counterclaim-Defendant Warrior:

**Parties**

1. Counterclaim-Plaintiff World Wrestling Entertainment, Inc. ("WWE") is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902. WWE is an integrated media and entertainment company principally engaged in the development, promotion and marketing of television programming, pay-per-view programming and live arena events, and the licensing and sale of branded consumer products. WWE is the successor-in-interest to Titan Sports, Inc.

2. Vincent K McMahon and Linda McMahon are husband and wife and, at all times material to this lawsuit, have been residents of the State of Connecticut. Mr. and Mrs. McMahon are the Chairman and CEO, respectively, of WWE.

3. Upon information and belief, Counterclaim-Defendant Warrior, at all times material to this lawsuit, has been a resident of the State of New Mexico.

4. On or around March 3, 2000, Vincent K. McMahon, Linda McMahon, and Titan Sports, Inc. entered into a settlement agreement (the "Settlement Agreement") with Warrior and Ultimate Creations, Inc. The terms of the Settlement Agreement are embodied in the hearing transcript attached as Exhibit 1 to the original complaint in this action which, pursuant to Local Rule of Civil Procedure 7.1(d), is incorporated herein by reference.

5. The Settlement Agreement settled two lawsuits between the parties, one in the Superior Court of the State of Arizona in and for the County of Maricopa, Cause No.

CV96-15377 and a separate action in the United States District Court for the District of Connecticut, Civil Action No. 3:98CV00467.

      6.      Pursuant to the Settlement Agreement, the parties agreed, among other things, not to disparage one another in any media, including, but not limited to, television, newspaper and the internet (the "Non-Disparagement Provision").

      7.      Warrior has repeatedly breached the Settlement Agreement by, *inter alia,* making disparaging statements regarding WWE and Mr. McMahon.

      8.      Warrior breached the Settlement Agreement by, *inter alia,* making disparaging statements regarding WWE and Mr. McMahon prior to the release of the DVD entitled "The Self Destruction of the Ultimate Warrior."

      9.      Such disparaging statements regarding WWE and Mr. McMahon include, but are not limited to, the following statements.

      10.     On June 6, 2002, Warrior authored and published an article on his internet website, www.ultimatewarrior.com (attached hereto as Exhibit 1), which stated as follows:

    (a)    addressing a witness's testimony that was unfavorable toward Warrior in the Prior Action, "His memory had been radically manipulated … and he had been bought by Vince McMahon . . . ." *See* Ex. 1, p. 2.

    (b)    that "the product [WWE and the McMahons] put out is sick and repugnant." *See* Ex. 1, p. 5.

    (c)    that "Titan, spearheaded by the McMahons, long ago crossed over the propriety line. All the bank in the world does not change that. You know it. I know it. The whole thinking world knows it. All their

    arguments defending their right to do it are nothing more than baseless rationalizations and base denials." *See* Ex. 1, p. 5.

  (d) that "[t]he absence of moral principle in the business, along with the crude, profane creativity, is why I don't, and will not, entertain anymore for a company such as Titan." *See* Ex. 1, p. 5.

11. On May 14, 2003, Warrior authored and published another article on his internet website, www.ultimatewarrior.com, entitled "Addressing Death in Wrestling" (attached hereto as Exhibit 2), which stated as follows:

  (a) "[L]et me enlighten you and be more bold, come out of my shell a little here, even chance offending people unlike how I have tried very hard not to do up till now—WWE needs the debauchery and death." *See* Ex. 2, p. 5.

  (b) "Nobody in the WWE cares" (referring to deaths of wrestlers). *See* Ex. 2, p. 6.

  (c) "The house that the McMahons built has always been filled with rooms minus mirrors …." *See* Ex. 2, p. 6.

  (d) that WWE does not care if its wrestlers die because "it lessens the headaches over what to do with used up talent begging to be kept on the payroll for life. And it's a quick, non-litigious way to get rid of done-for talent …. Unlikely to admit it, this selective elimination is a convenience I'm sure WWE would like to be able to depend on." *See* Ex. 2, pp. 5-6.

12. On May 20, 2003, Warrior authored and published an article on his internet website entitled "Animal Rebuttal … Morals and Professional Wrestling" (attached as Exhibit 3), which stated as follows:

  (a) that WWE is "a great company to those who have no principles and the people who run it are great only to those who enjoy working for people who are just as unprincipled." *See* Exhibit 3, p. 2.

  (b) that the McMahons "have no problem making those who come back on their hands and knees suffer." *See* Ex. 3, p. 2.

13

1
2
3
4
      (c)    in the process of criticizing another wrestler, Warrior also accused WWE of "degenerate and immoral" acts: "You do your thing, thinking that you're a kind of moral corrective, and WWE is doing 50 degenerate and immoral things (at least) behind your back having laughs a-mile-minute disrespecting you and what you believe." Ex. 3, p. 5.

13. On February 26, 2003, Warrior gave a speech at Bentley College. A summary of the contents of that speech was posted by Warrior on his internet website (attached hereto as Exhibit 4).

14. According to the summary of the speech posted by Warrior on his website, Warrior stated that he left WWE because "Titan was ripping off his ideas and marketing the ideas themselves, his back was against the wall and he had no other choice but to leave the company and settle things in court." *See* Ex. 4, p. 3.

15. On October 16, 2003, Warrior gave a speech at Penn State University. A summary of the contents of that speech was posted by Warrior on his internet website (attached hereto as Exhibit 5).

16. According to the summary of the speech posted by Warrior on his website, Warrior stated as follows:

      (a)    that he left wrestling because "wrestling became perverse." *See* Ex. 5, p. 1.

      (b)    at least four times during the presentation, Warrior called Vince McMahon a "scumbag." *See* Ex. 5, p. 1.

17. Warrior gave an interview to Dan Flynn, who maintains an internet website at www.flynnfiles.com. In the interview of Warrior, which was posted on Flynn's website on June 28, 2004 in a four-part series (attached hereto as Exhibit 6), Warrior stated as follows:

14

  (a)  that "Vince McMahon and other males … were essentially getting paid big money to behave a lot like kids."  *See* Ex. 6, Part 1, p. 1.

  (b)  that "Vince and I had some professional fallouts.  Through the handling of those fallouts, I came to see him in an unethical, unfavorable light, and began to question his and others' definitions of success and their definitions of what they thought it was to be man, or how they thought one should think and act like a man."  *See* Ex. 6, Part 1, p. 1.

  (c)  with respect to certain "born-again Christians" who wrestle for WWE like Shawn Michaels, "Vince is laughingly stabbing them with their own Devil's pitchfork."  *See* Ex. 6, Part 1, p. 4.

  (d)  that he "fought Vince in a five-year litigation, on principle.  I stood up to his ways, the ways he screwed many, many others. While others have never done that, yet every single person I worked with knew and expressed how Vince had wronged them."  *See* Ex. 6, Part 1, p. 4.

  (e)  that "[t]he people who have their heads up their asses the farthest and have really off-putting unhealthy egos are Vince and [Hulk] Hogan.  They really do deserve each other.  They are cons all the way through and weirdly get off living their lives that way."  *See* Ex. 3, Part 3, p. 5.

  (f)  that "Vince, in subtle, covert ways, was always screwing people over.  His entire business, in many ways, has been built on the backs of people he's screwed."  *See* Ex. 6, Part 3, p. 6.

  (g)  that "[o]n the whole, I have absolutely no respect or admiration for him.  I see him as unmanly. … People like this also have little trouble at being phonies, liars, and backstabbers.  They just see being so as coming with the territory.  I'd say Vince has been very good at hiding his, in truth, losing hand.  He's gotten good at that over years.  After all, he's the ringmaster of a "work."  But he still has to face his own disappointment and ugliness each day when he looks in the mirror."  *See* Ex. 6, Part 4, p. 6.

  18.  Warrior authored and published a July 27, 2005 article on his internet website entitled "Warrior Speaks to WWE DVD Rumors" (attached hereto as Exhibit 7), which stated as follows:

  (a)  that Mr. McMahon is "a man who doesn't always put good business sense over his own ego and stupid ideas.  He is like a child who throws his toys when he doesn't get his own way, and is very malicious and vindictive."  *See* Ex. 7, p. 5.

15

  (b) addressing Mr. McMahon, "[a]fter all these years, though, it's really disappointing to see that you've only become more juvenile and childlike. It's quite obvious, shrivel by shrivel, you've lost your balls altogether. So I know you can't be in any pain straddling that fence." *See* Ex. 7, p. 5.

  (c) that Mr. McMahon is a "malicious and vindictive kook" (*see* Ex. 7, p. 6), and that WWE is a "company run by liars." *See* Ex. 7, p. 5.

  (d) addressing Mr. McMahon, "[t]he only thing really left to do is push your overmasturbated, [sic] seedy creative envelope more open, since you obviously intend to keep beating limp meat, would be for you to actually televise the fucking you've been doing to so many over just as many years." *See* Ex. 7, p. 7.

  (e) addressing Mr. McMahon, "[j]ust as you worked so hard to do, you are now surrounded by ass-licking sycophants and mostly slavish, non-thinking, sunken chest talent, but the consequence is that you are burnt out, slow and stuck, have no new ideas and would have a heart attack if true passion, real manliness and legitimate challenge walked into one of the pyrogenic-laden [sic] arenas you use to entertain your equally passionless, mindless and sycophantic audiences." *See* Ex. 7, p. 7.

  (f) addressing Mr. McMahon, "[o]f course, if this wisdom doesn't work for you, Vince, we can just stick with you making an ass of yourself, and kissing mine. While you are down there notice, *again*, the real balls." *See* Ex. 7, p. 9.

  (g) addressing Mr. McMahon, "[t]he failure that eats away at you the most Vince? …it is that you didn't OWN me like you do all the others. That you never emasculated me, turned my balls into squirrel nuts like you've done to all the others." *See* Ex. 7, p. 8.

  19. In addition, Warrior himself approved of the title of the DVD, "The Self-Destruction of the Ultimate Warrior." In his July 27, 2005 Article, Warrior stated: "You want to title the Ultimate Warrior DVD "The Self Destruction of the Ultimate Warrior"? Great idea. Whoever came up with it deserves a promotion." *See* Ex. 7, p. 6.

  20. According to Warrior, "being labeled self-destructive by [Vincent McMahon] is a badge of honor and [he] wear[s] it with pride." *See* Ex. 7, p. 6.

16

21. The Settlement Agreement also precluded the parties from disclosing the terms and conditions of the Settlement Agreement, other than the fact that the case had been settled and dismissed (the "Confidentiality Provision").

22. Warrior has repeatedly breached the Confidentiality Provision by, *inter alia*, publicly disclosing the outcome of the Prior Action and the terms of the Settlement Agreement.

23. For instance, Warrior stated in his February 25, 2003 speech at Bentley College: "[a]fter a long ordeal, Warrior finally prevailed in court over the WWF and should have been in the clear." *See* Ex. 4, p. 3.

24. Warrior also stated in his June 28, 2004 interview with Dan Flynn: "The short answer is that I prevailed . . . . I have all the intellectual property rights and everything to it." *See* Ex. 6, Part 3, p. 2.

### First Claim for Relief

**(Breach of Contract)**

25. The allegations set forth in the preceding paragraphs of this Counterclaim are incorporated herein by reference and reasserted as though fully set forth at length.

26. On or around March 3, 2000, the Defendants and Plaintiffs entered into the Settlement Agreement whereby Plaintiffs agreed, among other things, to the Non-Disparagement Provision and the Confidentiality Provision.

27. The Settlement Agreement is valid and subsisting.

28. Prior to Warrior's breaches of the Settlement agreement described herein, WWE fully complied with all of its obligations under the Settlement Agreement.

29. Warrior has repeatedly breached the Settlement Agreement, including, but not limited to, by the unlawful conduct described herein.

30. Warrior breached the Settlement Agreement prior to the release of the DVD entitled "The Self Destruction of the Ultimate Warrior."

31. Warrior's breaches of the Settlement Agreement were material.

32. As a direct and proximate result of Warrior's breach of the Settlement Agreement, Defendants have suffered injury and been damaged in an amount to be determined at trial together with attorney's fees, costs, and expenses.

33. The matter arises out of contract and Counterclaimants are therefore entitled to recover from Counterdefendant their reasonable attorneys' fees herein incurred pursuant to the provisions of A.R.S. §12-341.01.

WHEREFORE, the Counterclaim-Plaintiffs respectfully request that this Honorable Court enter judgment in their favor and grant them the following relief:

(1) An order declaring that Warrior is in breach of the Settlement Agreement and that Warrior breached the Settlement Agreement prior to the release of the DVD entitled "Self Destruction of the Ultimate Warrior";

(2) An Order declaring that, as a result of Warrior's material breach of the Settlement Agreement, WWE was excused from performance of the Non-Disparagement Provision of the Settlement Agreement.

(3) An order permanently enjoining and preventing Warrior from breaching the Settlement Agreement in the future;

(4) Damages in an amount to be determined at trial;

(5) Costs and attorneys' fees as allowed by law;

(6) Pre-judgment and post-judgment interest as allowed by law; and

(7) Such other and further relief as this Court deems just and appropriate.

RESPECTFULLY SUBMITTED this 2nd day of October, 2007.

ALVAREZ & GILBERT PLLC

By /s/ JTG#004555
John T. Gilbert, #004555
Steven G. Ford, #016492
14500 N. Northsight Blvd. Ste. 216
Scottsdale, AZ 85260
(602) 263-0203 (phone)
(480) 686-8708 (facsimile)

Of Counsel:
Jerry S. McDevitt, Pro hac vice
Curtis B. Krasik, Pro hac vice
Amy L. Barrette, Pro hac vice
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
The Henry Oliver Building
535 Smithfield Street
Pittsburgh, Pennsylvania  15222
(412) 355-6500 (phone)
(412) 355-6501 (facsimile)

COPY of the foregoing mailed this 2nd day of October, 2007, to:

Honorable Roslyn O. Silver
United States District Court
Sandra Day O'Connor Courthouse
Suite 624
401 W. Washington St., SPC 59
Phoenix, AZ 85003-2158

19

1  COPY of the foregoing transmitted
   electronically this 2nd day of October,
2  2007, to:

3  Daniel D. Maynard, Esq.
4  Michael D. Curran, Esq.
   MAYNARD CRONIN ERICKSON
5  CURRAN & SPARKS, PLC
   1800 Great American Tower
6  3200 North Central Avenue
7  Phoenix, Arizona  85012
   Attorneys for Plaintiffs
8

9
   By /s/ JTG#004555
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28