# EXHIBIT 3

McMahon   Depo. Exh. # 1
Pamela J. Mayer
Date   2-18-99

## TITAN SPORTS, INC.
### BOOKING CONTRACT

This contract is made this 23RD day of September, 1987, by and between Titan Sports, Inc., a Massachusetts corporation d/b/a The World Wrestling Federation (WWF) with its principal place of business at 1055 Summer Street in Stamford, Connecticut (hereinafter referred to as "PROMOTER"), and Jim Hellwig AKA Dingo Warren residing at 3400 W COUNTRY CLUB DR#114 IRVING, TEXAS in Tarra Texas (hereinafter referred to as "WRESTLER"), whose ring name is _____ " Ultimate Warrior ".

### PREMISES

WHEREAS, PROMOTER is duly licensed, as required, to conduct professional wrestling exhibitions and is actually engaged in the business of organizing, publicizing, arranging, staging and conducting professional wrestling exhibitions throughout the world and of representing professional wrestlers in the promotion and exploitation of a WRESTLER's name, likeness, personality and character; and

WHEREAS, PROMOTER has established a nationwide network of television stations which regularly broadcast PROMOTER's wrestling programs for purposes of publicizing PROMOTER's professional wrestling exhibitions; and in addition thereto, PROMOTER has developed and produced certain other television programs, such as "TNT" and "Saturday Night's Main Event" which are also used to publicize PROMOTER's professional wrestling exhibitions; and

WHEREAS, PROMOTER's business operations afford WRESTLER opportunities to wrestle and obtain public exposure which will increase the value of his/her wrestling services and his/her standing in the professional wrestling community; and

WHEREAS, WRESTLER is duly licensed, as required, to engage in professional wrestling exhibitions and is actually engaged in the business of performing as a professional wrestler; and

WHEREAS, WRESTLER desires PROMOTER to arrange wrestling matches for WRESTLER and to assist WRESTLER in obtaining public exposure through live exhibitions, television programs, public appearances, and merchandising activities, or otherwise:

NOW THEREFORE, in consideration of the premises and of their mutual promises and agreements as herein set forth, the parties do hereby agree as follows:

T-JH 00006

WWE/WAR 001491

## 1.  BOOKING

1.1   WRESTLER hereby grants exclusively to PROMOTER, and PROMOTER hereby accepts, the following worldwide rights:

(a) During the term of this Agreement, to book WRESTLER for and to arrange WRESTLER's performance in wrestling matches at professional wrestling exhibitions, as well as appearances of any type at other events, engagements or entertainment programs in which WRESTLER performs services as a professional wrestler (collectively the "Events"), whether such Events are staged before a live audience, in a broadcast studio, on location (for later viewing or broadcast), or otherwise.

(b) During the term of this Agreement, to sell or otherwise distribute tickets of admission to the general public to any or all of the Events.

(c) During the term of this Agreement, to solicit, negotiate, and enter into agreements for and on behalf of WRESTLER for the exploitation of publicity, merchandising, commercial tie-up, publishing, personal appearance, performing in non-wrestling events, and endorsement rights (collectively referred to as the "Rights") of WRESTLER, his/her legal and/or ring name, likeness, personality, and character, or any other of his/her distinctive or identifying indicia; provided PROMOTER shall inform WRESTLER of any such agreements.

1.2 In consideration of WRESTLER's grant of rights, license and other services, as hereinafter set forth, and provided WRESTLER shall faithfully and fully perform all obligations hereunder, PROMOTER shall endeavor to book WRESTLER in wrestling matches at various Events, and during the term of this Agreement PROMOTER guarantees WRESTLER a minimum of ten (10) bookings per year at PROMOTER's own Events.

## 2.  PROGRAMS

2.1 WRESTLER hereby grants to PROMOTER and PROMOTER hereby accepts, the exclusive right during the term of this Agreement to video tape, film, photograph, or otherwise record, or to authorize others to do so, by any media now known or hereafter created, any or all of the Events. (These recordings by tape, disc, film, or otherwise are collectively referred to herein as "Programs").

2.2 PROMOTER may produce, reproduce, manufacture, record, perform, exhibit, broadcast, televise by any form of television (including without limitations, free, cable, pay cable, closed circuit and pay-per-view television), transmit, publish, copy, print, reprint, vend, sell, distribute and use, and to authorize others to do so, the Programs in perpetuity and in any manner or media and by any art, method or device, now known or hereafter created (including without limitation, by means of

T-JH-00007

WWE/WAR 001492

videodisc, videocassette, theatrical motion picture and
non-theatrical motion picture).

2.3. PROMOTER shall own in perpetuity all of the rights,
results, products and proceeds in and to, or derived from the
Programs (including without limitation, all incidents,
dialogue, characters, actions, gags, routines, ideas, titles,
inventions, and other material written, composed, submitted,
added, improvised, interpolated and invented by WRESTLER in
connection with his/her appearance in the Programs) and to
obtain copyright and/or trademark protection therefor in the
name of PROMOTER or PROMOTER's designee.

### 3.   TRADEMARKS

3.1  WRESTLER hereby grants to PROMOTER and PROMOTER hereby
accepts, the exclusive license and right during the term of
this Agreement, to use WRESTLER's service marks, trademarks and
any and all of his/her other distinctive and identifying
indicia, including but not limited to his/her legal name,
his/her ring name, likeness, voice, signature, costumes, props,
gimmicks, routines, themes, personality, character, and
caricatures as used by or associated with WRESTLER in the
business of professional wrestling, (collectively, the
"Intellectual Property"). It is the intention of the parties
that the license granted with respect to Intellectual Property
is exclusive to PROMOTER during the term hereof, even to the
exclusion of WRESTLER, and the license includes the right to
sublicense, promote, expose, exploit and otherwise use the
Intellectual Property in any commercial manner now known or
hereafter discovered.

3.2  If WRESTLER does not own, possess or use service marks,
trademarks or distinctive and identifying indicia and PROMOTER
develops such service marks, trademarks, and distinctive and
identifying indicia for WRESTLER, they shall belong to PROMOTER
and PROMOTER shall have the exclusive license and right in
perpetuity, to use, and to authorize others to use, WRESTLER's
ring name, likeness, voice, signature, costumes, props,
gimmicks, routines, themes, personality, character and
caricatures as used by or associated with WRESTLER's
performance as a professional wrestler (collectively "Name and
Likeness"). It is the intention of the parties that the
license with respect to Name and Likeness belongs to PROMOTER
in perpetuity, even to the exclusion of WRESTLER, and the
license includes the right to sublicense, promote, expose,
exploit and otherwise use the Name and Likeness in any
commercial manner now known or hereinafter discovered.

3.3  WRESTLER agrees to cooperate fully and in good faith with
PROMOTER for the purpose of securing and preserving their
respective rights in and to the trademarks, service marks,
Intellectual Property, and Name and Likeness. At PROMOTER's
expense and request PROMOTER and WRESTLER shall take such steps

T-JH 00008

as PROMOTER deems necessary for any registration or any litigation or other proceeding, to protect their respective rights in such service marks, trademarks or other Intellectual Property, and Name and Likeness.

### 4.   MERCHANDISING

4.1   WRESTLER hereby grants to PROMOTER, and PROMOTER hereby accepts, the exclusive right during the term of this Agreement to use the Intellectual Property and/or Name and Likeness to manufacture, have manufactured, print, produce, reproduce, broadcast, rebroadcast, distribute, sell, and otherwise commercially exploit and use, any and all copyrightable material, goods, or merchandise, or any other item containing copyrightable material; and, as to all such items created and produced during the term of this Agreement, promoter shall have exclusive right in perpetuity, to sell and/or distribute them. By way of example and not of limitation, such items include t-shirts, posters, photos, television rights, video tapes and video cassettes, dolls, books, biographies, articles and stories, and any other such copyrightable material or item relating to WRESTLER or his/her performance as a professional wrestler. It is the intention of the parties that this grant is exclusive to PROMOTER even to the exclusion of WRESTLER. PROMOTER shall own all copyrights in any and all such materials, goods, merchandise and items and shall be entitled to obtain registrations thereof in its own name, and wrestler shall provide all reasonable assistance to PROMOTER in so obtaining such copyrights.

4.2   WRESTLER hereby grants to PROMOTER, and PROMOTER hereby accepts, the identical rights described in paragraph 4.1 above for non-copyrightable material and items, such as key chains, pens, etc., upon the same terms and conditions as stated in paragraph 4.1. It is the intention of the parties that this grant is exclusive to PROMOTER, even to the exclusion of WRESTLER.

### 5.   EXCLUSIVITY

5.1   It is the understanding of the parties that all rights, licenses, privileges and all other items herein given or granted to PROMOTER during the term of this Agreement are exclusive to the PROMOTER even to the exclusion of WRESTLER.

5.2   In the event WRESTLER desires to participate in any commercial activity in which PROMOTER is not otherwise engaged, and WRESTLER's participation in such activity requires use of his/her Intellectual Property or Name and Likeness, PROMOTER may at its discretion, upon WRESTLER's written request, execute a sublicense to WRESTLER for the limited purpose of authorizing WRESTLER to participate in such specific commercial activity upon mutually agreeable terms and conditions. PROMOTER's sublicense to WRESTLER shall constitute an exception to

T-JH 00009

WWE/WAR 001494

paragraphs 3 and 4 herein, solely with respect to WRESTLER's participation in such specific commercial activity and shall not license, sublicense, authorize, grant or permit any other or further appropriation or infringement of PROMOTER's rights whatsoever.

### 6.   TERM AND TERRITORY

6.1   The term of the Agreement shall be two (2) years from the date hereof. Thereafter, this Agreement shall automatically renew for successive one year terms, unless either party shall serve written notice to the other party at least ninety (90) days prior to the end of the term of this Agreement of such party's decision to terminate this Agreement as at the end of the term. Reference herein to the term hereof means the original term and any such renewal or extended term. During any such extended term, all rights, duties, obligations, and privileges hereunder shall continue as stated herein. Notwithstanding anything herein to the contrary, termination of this Agreement shall not affect PROMOTER's ownership of and rights to any Programs; the rights, results, products, and proceeds in and to and derived from WRESTLER's performance as a professional wrestler during the term of this Agreement; and the exploitation of the rights set forth in Paragraphs 1, 2, 3 and 4 hereof in any and all media now known or hereafter developed; and any Agreement concerning any and all of the Rights to WRESTLER's Name and Likeness.

6.2   The territory of this Agreement shall be the world.

### 7.   PAYMENTS

7.1   If WRESTLER appears in any Event in an arena before a live audience at which admission is charged other than those arena events which are taped for promotional purposes pursuant to paragraph 7.2 hereof, he/she shall be paid by PROMOTER an amount equal to such percentage of the receipts for such Event as is consistent with the nature of the match in which WRESTLER appears, i.e., preliminary bout, main event, etc.; the prevailing practices of the United States professional wrestling community; and any standards PROMOTER or others establish specifically for such Event. However, such amount shall not be less than One Hundred Fifty ($150.00) Dollars, per Event.

7.2   If WRESTLER renders his/her service in connection with an arena or studio event which is taped for promotional use on PROMOTER's television network or otherwise, he/she shall be paid by PROMOTER an amount not less than $50.00 for each day, if any, on which WRESTLER renders services hereunder in connection with the production of such promotional television show(s).

5

T-JH 00010

WWE/WAR 001495

7.3  In the event WRESTLER's Intellectual Property, and/or Name and Likeness are exploited by PROMOTER with respect to copyrightable material or Items pursuant to paragraph 4.1 hereof, or noncopyrightable material, or Items pursuant to paragraph 4.2 hereof, WRESTLER shall receive an amount equal to five percent (5%) of the net receipts derived by PROMOTER from any such exploitation. "Net receipts" means the amount received by promoter after payment of and provision for all costs and expenses, except income taxes.

     If WRESTLER's Intellectual Property or Name and Likeness are exploited by PROMOTER in connection with other WRESTLERS represented by PROMOTER, PROMOTER shall allocate and prorate the amount of compensation paid to WRESTLER pursuant to this paragraph 7.3 and to paragraph 7.4 below, based upon the number of wrestlers whose Intellectual Property and/or Name and Likeness are so exploited.

7.4  In the event WRESTLER's Intellectual Property and/or Name and Likeness are licensed, sublicensed, or otherwise assigned to third parties for reproduction and/or sale and distribution, in conjunction with any copyrightable material or Items, pursuant to paragraph 4.1 hereof, or noncopyrightable material or Items, pursuant to paragraph 4.2 hereof.  WRESTLER shall receive twenty-five percent (25%) of the net receipts received by PROMOTER with respect to any such licensing, sublicensing or assignment.  "Net receipts" means the amount received by PROMOTER after payment of and provision for all costs and expenses, except income taxes.

7.5  In the event WRESTLER's Intellectual Property and/or Name and Likeness are licensed, sublicensed or assigned for non-wrestling personal appearances and performances such as personal appearances for advertising or non-wrestling promotional purposes, radio and television commercials, movies, etc., WRESTLER shall be paid an amount to be mutually agreed to by WRESTLER and by PROMOTER of the net receipts received by PROMOTER.  "Net receipts" means the amount received by PROMOTER after payment of and provision for all costs and expenses, except income taxes.

7.6  It is the understanding of the parties that WRESTLER shall not be paid anything for the exploitation of his/her Intellectual Property and/or Name and Likeness in PROMOTER's wrestling magazine currently known as the <u>WWF Official Magazine</u>, or any of PROMOTER's other magazines, which PROMOTER may publish, produce or distribute at arenas, at newsstands and/or by mail.  Also, WRESTLER shall not be paid anything for the exploitation of his/her Intellectual Property and/or Name and Likeness in any of the WWF "Best of" series of video cassettes, WRESTLEMANIA videocassettes, nor any series which may be produced from the <u>Saturday Night's Main Event</u> program, or any videocassette in which the WRESTLER is not exclusively featured.  An Exclusive Feature shall mean that the WRESTLER is

T-JH 00011

WWE/WAR 001496

shown in each and every match in the videocassette. *WRESTLER* is entitled to payment only in those videocassettes (or discs) which feature him/her exclusively, i.e., "Roddy Piper", or "Andre the Giant", or on those cassettes which feature a tag team or group to which *WRESTLER* belongs, i.e., the "Hart Foundation". Relative to a tag team or group cassette, payments will be made to *WRESTLER* on a pro-rated basis as provided for in paragraphs 7.3 and 7.4 herein.

## 8. PROMOTER'S OBLIGATIONS

8.1   PROMOTER shall be responsible for obtaining all appropriate licenses to conduct professional wrestling exhibitions.

8.2   PROMOTER shall bear the following costs in connection with the development and enhancement of the value of *WRESTLER's* performance as professional *WRESTLER* and his/her standing in the professional wrestling community, all of which shall inure to the benefit of *WRESTLER*:

(a) In connection with *WRESTLER's* appearances at Events staged before a live audience, PROMOTER shall bear the cost of location rental, sound and light equipment, wrestling ring, officials, police and fire protection, and such additional security guards as PROMOTER shall require in its discretion, promotional assistance, facility charges, and applicable state and local admission taxes;

(b) In connection with the production, distribution, and exploitation of the Programs, PROMOTER shall bear all costs incurred in connection with such production, distribution, broadcast, transmission or other forms of mass media communication.

(c) In connection with any licensing activities and/or merchandising activities, PROMOTER shall bear all costs of negotiating, securing or otherwise obtaining the licensing arrangements, including costs of agents, consultants, attorneys and others involved in making the licensing arrangements; and PROMOTER shall bear all costs of creating, designing, developing, producing and marketing merchandise. In order to fulfill these obligations, PROMOTER may make any arrangements, contractual or otherwise, it deems appropriate to delegate, assign, or otherwise transfer its obligations.

8.3   PROMOTER shall schedule events and book *WRESTLER* for Events. In doing so, PROMOTER shall select the time and location of the Events at which *WRESTLER* is booked, *WRESTLER's* opponent, and any other wrestlers who will appear at such Event. PROMOTER shall provide *WRESTLER* with reasonable advance notice of the date, time, and place of any such Event, and *WRESTLER* shall appear at the designated location for any such Event no later than one hour before the designated time. If

T-JH 00012

WWE/WAR 001497

WRESTLER fails to appear as required without advance 24 hour notice to PROMOTER and PROMOTER must substitute another wrestler to appear in WRESTLER's place at the Event, then WRESTLER shall be subject to a fine to be determined by PROMOTER.

### 9. WRESTLER'S OBLIGATIONS

9.1 WRESTLER shall bear responsibility for obtaining all appropriate licenses to engage in, participate in, or otherwise appear in professional wrestling exhibitions.

9.2 WRESTLER shall be responsible for his/her own training, conditioning, and maintenance of wrestling skills and abilities, as long as they do not interfere with WRESTLER's appearance at scheduled events as follows:

(a) WRESTLER shall establish his/her own training program, shall select time of training, duration of training, exercises, pattern of exercise and other actions appropriate to obtaining and maintaining his/her physical fitness for wrestling. WRESTLER shall select his/her own training apparatus, including mats, weights, machines and other exercise paraphernalia. WRESTLER is responsible for supplying his/her own training facilities and equipment, whether by purchase, lease, license, or otherwise.

(b) WRESTLER shall establish his/her own method of physical conditioning, shall select time for conditioning, duration of conditioning and form of conditioning. WRESTLER shall select his/her time for sleep, time for eating, and time for other activities. WRESTLER shall select his/her own foods, vitamins and other ingested items, excepting illegal and/or controlled substances and drugs.

9.3 WRESTLER shall be responsible for supplying all wardrobe, props, and make-up necessary for the performance of WRESTLER's services at any Event at which WRESTLER appears and for any costs incurred in connection with his/her transportation to and from any such Events (except those transportation costs which are covered by PROMOTER's current travel policy), as well as the costs of food consumed and hotel lodging utilized by WRESTLER in connection with his/her appearance at such Events, provided that if PROMOTER has booked WRESTLER to appear at a particular Event and the Event fails to occur by reason of cancellation of the Event, PROMOTER shall pay WRESTLER's reasonable out-of-pocket expenses incurred as a direct result of PROMOTER's booking of WRESTLER's appearance.

9.4 WRESTLER shall use his/her skills and talents as a professional wrestler and be responsible for developing and executing the various details, movements, and maneuvers of each match consistent with and complying with all requirements,

T-JH 00013

WWE/WAR 001498

directions and requests made by PROMOTER in connection with the
booking of WRESTLER at scheduled Events.

9.5   WRESTLER agrees to cooperate and assist in the
publicizing, advertising and promoting of scheduled Events, and
to appear at and participate in a reasonable number of joint
and/or separate press conferences, interviews, and other
publicity or exploitation appearances or activities (any or all
of which may be filmed, taped, or otherwise recorded, telecast
by any form of television now known or hereafter created,
including without limitation free, cable, pay cable, and closed
circuit and payper-view television, broadcast, exhibited,
distributed, and used in any manner or media and by any art,
method, or device now known or hereafter created, including
without limitation by means of video disk, video cassette,
theatrical motion picture and/or non-theatrical motion
picture), at times and places designated by PROMOTER. WRESTLER
will receive no additional compensation in connection
therewith.

9.6   WRESTLER shall use his/her best efforts in the ring in the
performance of wrestling services for a match or other
activity. In order to provide an honest exhibition of his/her
wrestling skills and abilities, consistent with the customs of
the professional wrestling industry; and WRESTLER agrees all
matches shall be finished in accordance with the PROMOTER's
direction. Breach of this paragraph shall cause a forfeiture
of any payment due WRESTLER, pursuant to paragraph 7.1, for the
Event at which the breach occurs and shall terminate PROMOTER's
guarantee as provided in paragraph 1.2 above, as well as all
other obligations of PROMOTER to WRESTLER hereunder, but such
breach shall not terminate PROMOTER's licenses and other rights
hereunder during the term hereof.

9.7   WRESTLER acknowledges the right of PROMOTER to make
decisions with respect to the preparation and exploitation of
the Programs or the exercise of any other rights respecting
Intellectual Property or Name and Likeness, and in this
connection WRESTLER acknowledges and agrees that PROMOTER's
decision with respect to any agreements disposing of the rights
to WRESTLER's Intellectual Property and/or Name and Likeness
are final, except as to WRESTLER's legal name, which PROMOTER
may only dispose of upon WRESTLER's consent. WRESTLER agrees
to execute any agreements PROMOTER deems necessary in
connection with any such agreements, and if WRESTLER is
unavailable or refuses to execute such agreements, PROMOTER is
hereby authorized to do so in WRESTLER's name as WRESTLER's
attorney-in-fact.

9.8   WRESTLER agrees to cooperate fully and in good faith with
PROMOTER in the event PROMOTER deems it necessary to obtain
life, disability, or other insurance upon WRESTLER in such
amount as PROMOTER may determine necessary. WRESTLER will
submit to physical or other examinations as may be required to

T-JH 00014

WWE/WAR 001499

obtain the insurance, and in the preparation and execution of delivering applications and other documents as may reasonably be required.

9.9  WRESTLER shall indemnify and defend PROMOTER and PROMOTER's licensees, assignees, and affiliates and their respective officers, directors, employees, and representatives and hold each of them harmless against any claims, demands, liabilities, actions, costs, suits, proceedings or expenses, incurred by any of them by reason of WRESTLER'S breach or alleged breach of any warranty, undertaking, representation, agreement, or certification made or entered into herein or hereunder by WRESTLER.  And, WRESTLER shall indemnify and defend PROMOTER against any and all claims arising out of WRESTLER'S acts, transactions and/or conduct within or around the ring, hallways, dressing rooms, parking lots, or other areas within or in the immediate vicinity of the facilities where PROMOTER has scheduled Events at which WRESTLER is booked.

9.10  WRESTLER shall act at all times with due regard to public morals and conventions during the term of this Agreement.  If WRESTLER shall have committed or shall commit any act or do anything that is or shall be an offense involving moral turpitude under Federal, state or local laws, or which brings him/her into public disrepute, contempt, scandal or ridicule, or which insults or offends the community or which injures his/her reputation or diminishes the value of his/her professional wrestling services then at the time of any such act, or any time after PROMOTER learns of any such act, PROMOTER shall have the right, in addition to its other legal and equitable remedies, to terminate this Agreement forthwith.

## 10.  WARRANTY

10.1  WRESTLER represents, warrants, and agrees that he/she is free to enter into this Agreement and to grant the rights herein granted to PROMOTER; he/she has not heretofore entered and shall not hereafter enter into any contract or agreement which is in conflict with the provisions hereof or which would or might interfere with the full and complete performance by WRESTLER of his/her obligations hereunder or the free and unimpaired exercise by PROMOTER of any of the rights herein granted to it; WRESTLER further represents and warrants there are not pending claims or litigation affecting WRESTLER which would or might interfere with the full and complete exercise or enjoyment by PROMOTER of any rights and licenses granted hereunder.  Any exceptions to this Warranty are set forth in Exhibit A, attached hereto.

10.2  WRESTLER represents, warrants and agrees that he/she is in sound mental and physical condition; that he/she is suffering from no disabilities that would impair or adversely

T-JH-00015

affect his/her ability to perform professional wrestling services; and that he/she is free from the influence of illegal drugs or controlled substances, which can threaten his/her well being and pose a risk of injury to himself/herself or others. To insure compliance with this warranty, WRESTLER shall abide by PROMOTER's Drug Policy for Wrestlers and consents to the sampling and testing of his/her urine in accordance with such policy. In addition, WRESTLER agrees to submit annually to a complete physical examination by a physician either selected or approved by PROMOTER.

### 11.  EARLY TERMINATION

11.1  This Agreement may be terminated prior to the end of its term by a written instrument executed by each of the parties expressing their mutual consent to so. terminate without any further liability on the part of either. In the event of such early termination, WRESTLER and PROMOTER shall share in perpetuity revenues derived from the use or the Intellectual Property and/or Name and Likeness, all as provided in paragraphs 7.3, 7.4 and 7.5 above.

11.2  This Agreement will be terminated by WRESTLER's death during the term.

### 12.  BREACH

12.1  In the event of the breach of this Agreement by PROMOTER, WRESTLER may recover such damages as may be established in any Court of law having jurisdiction of the parties and the subject matter.

12.2  In the event of WRESTLER's breach, WRESTLER shall forfeit any future payments due pursuant to paragraphs 7.3, 7.4, 7.5, and 7.6 and shall not appear under, use or exploit in any manner, parenthetically or otherwise, his/her Intellectual Property (except for his/her legal name) for the remaining term of this Agreement, and/or his/her Name and Likeness forever.

12.3  The parties further agree that because of the special, unique, and extraordinary nature of the obligations of PROMOTER and WRESTLER respecting all rights and licenses concerning bookings, promoting, programs, Events, Intellectual Property and/or Name and Likeness, which are the subject matter of this agreement, PROMOTER shall be entitled to injunctive and other equitable relief against WRESTLER to prevent WRESTLER's breach or default hereunder and such injunction or equitable relief which shall be without prejudice to any other rights, remedies or damages which PROMOTER is legally entitled to obtain.

### 13.  MISCELLANEOUS

13.1  Nothing contained in this Agreement shall be construed to constitute WRESTLER as a partner or joint venturer of PROMOTER.

T-JH 00016

WWE/WAR 001501

nor shall WRESTLER have any authority to bind PROMOTER in any respect. WRESTLER is an independent contractor and WRESTLER shall execute and hereby irrevocably appoints PROMOTER his/her attorney-in-fact to execute, if WRESTLER refuses to do so, any instruments necessary to accomplish or confirm the foregoing.

13.2  This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and all prior understandings, negotiations and agreements are merged in this Agreement. There are no other agreements, representations, or warranties not set forth herein with respect to the subject matter hereof, and this Agreement may not be changed or altered except in writing signed by PROMOTER and WRESTLER.

13.3  In the event any part of parts of this Agreement are declared invalid or unenforceable, such declaration shall not affect any other or remaining provisions.

13.4  PROMOTER shall have the right to assign, license, or transfer any or all of the rights granted to and hereunder to any firm or corporation, and if any assignee shall assume in writing PROMOTER's obligations hereunder, PROMOTER shall have no further obligations to WRESTLER. WRESTLER may not assign, transfer or delegate his/her rights or obligations hereunder and any attempt to do so shall be void.

13.5  Any notices required or desired hereunder shall be in writing and sent postage prepaid by certified mail, return receipt requested, or by prepaid telegram addressed as follows, or as the parties may hereafter in writing otherwise designate:

        Titan Sports, Inc.
        ATTENTION:  Executive Vice President
        1055 Summer Street
        P.O. Box 3857
        Stamford, Connecticut 06905


TO WRESTLER:
        Jim Hellwig
        3420 W. Country Club Drive #114
        Irving, Texas

        The date of mailing shall be deemed to constitute the date of service of any such notice.

13.6  This Agreement is made in Connecticut and shall be governed by and interpreted in accordance with the laws of the State of Connecticut.

        IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

T-JH 00017

WWE/WAR 001502

TITAN SPORTS, INC.

BY: _Linda E. McMahon_

(Title): Executive Vice President

_____
WRESTLER's legal name, or
professional corporation

_____ Ultimate Warrior
WRESTLER's ring name

_____
WRESTLER's signature, and title,
if a professional corporation

STATE OF CONNECTICUT
COUNTY OF FAIRFIELD.

I, ____Elizabeth M. DiFabio__, a Notary Public for
said County and State, do hereby certify that
___Linda E. McMahon_____   Executive Vice President
        Name                          Title
of Titan Sports, Inc., personally appeared before me this day
and acknowledged the due execution of the foregoing instrument
to be ~~his~~/her free act and deed for the purposes therein
expressed.

WITNESS my hand and notarial seal this 3rd day of
__October_____, 19 87 .

_Elizabeth M. DiFabio_____
Notary Public
My commission expires: MY COMMISSION EXPIRES MARCH 31, 1989

STATE OF COUNTY OF ___TEXAS__
COUNTY OF ___DALLAS__

I, ____LYNN A. WHITE____, a Notary Public for
said County and State, do hereby certify that
___James Hellwig_____
   Real Name
personally appeared before me this day and acknowledged the due
execution of the foregoing instrument to be his/her free act
and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this 16th day
of __October____, 19 87 .

_Lynn A. White_____
Notary Public
My commission expires: _7/6/91_

13

T-JH 00018

WWE/WAR 001503