McMAHON Depo. Exh. # 3
Pamela J. Mayer
Date 2-18-99

TITAN SPORTS, INC.
BOOKING CONTRACT

This contract is made this ~~March~~ April 2 day of ~~March~~, 1992, by and between Titan Sports, Inc., a Delaware corporation d/b/a The World Wrestling Federation ("WWF") with its principal place of business at 1241 East Main Street in Stamford, Connecticut (hereinafter referred to as "PROMOTER"), and James Hellwig residing at 6229 East Via, Los Caballos, Paradise Valley, Arizona 85253 (hereinafter referred to as "WRESTLER"), whose ring name is "Ultimate Warrior".

PREMISES

WHEREAS, PROMOTER is duly licensed, as required, to conduct professional wrestling exhibitions and is actually engaged in the business of organizing, publicizing, arranging, staging and conducting professional wrestling exhibitions throughout the world and of representing professional wrestlers in the promotion and exploitation of a WRESTLER's name, likeness, personality and character; and

WHEREAS, PROMOTER has established a nationwide network of television stations which regularly broadcast PROMOTER's wrestling programs for purposes of publicizing PROMOTER's professional wrestling exhibitions; and in addition thereto, PROMOTER has developed and produced certain other television programs, such as "TNT" and "Saturday Night's Main Event" which are also used to publicize PROMOTER's professional wrestling exhibitions; and

WHEREAS, PROMOTER's business operations afford WRESTLER opportunities to wrestle and obtain public exposure which will increase the value of his/her wrestling services and his/her standing in the professional wrestling community and entertainment industry; and

WHEREAS, WRESTLER is duly licensed, as required, to engage in professional wrestling exhibitions and is actually engaged in the business of performing as a professional wrestler; and

WHEREAS, WRESTLER is a performing artist and the professional wrestling exhibitions arranged by PROMOTER constitute exhibitions and promotions organized to provide athletic-styled entertainment to the public, and such wrestling exhibitions constitute entertainment and are not competitive athletic competition; and



WARRIOR
EXHIBIT NO. 27
4-15-09
DONNA TERRELL

T-JH 00048

WHEREAS, WRESTLER desires PROMOTER to arrange wrestling matches for WRESTLER and to assist WRESTLER in obtaining public exposure through live exhibitions, television programs, public appearances, and merchandising activities, or otherwise;

NOW THEREFORE, in consideration of the premises and of their mutual promises and agreements as herein set forth, the parties do hereby agree as follows:

## 1. BOOKING

1.1     WRESTLER hereby grants exclusively to PROMOTER, and PROMOTER hereby accepts, the following worldwide rights:

(a) During the term of this Agreement, the right to book WRESTLER for and to arrange WRESTLER's performance in wrestling matches at professional wrestling exhibitions, as well as appearances of any type at other events, engagements or entertainment programs in which WRESTLER performs services as a professional wrestler (collectively the "Events"), whether such Events are staged before a live audience, in a television broadcast studio, on location (for later viewing or broadcast), or otherwise.

(b) During the term of this Agreement, the right to sell or otherwise distribute tickets of admission to the general public for viewing any or all of the Events, as well as any closed circuit television, or other video exhibition of the Events.

(c) During the term of this Agreement, the right to solicit, negotiate, and enter into agreements for and on behalf of WRESTLER for the exploitation of publicity, merchandising, commercial tie-up, publishing, personal appearance, performing in non-wrestling events, and endorsement rights (collectively referred to as the "Rights") of WRESTLER, his/her legal and/or ring name, likeness, personality, and character, or any other of his/her distinctive or identifying indicia; provided PROMOTER shall inform WRESTLER of any such agreements.

1.2     In consideration of WRESTLER's grant of rights, license and other services, as hereinafter set forth, and provided WRESTLER shall faithfully and fully perform all obligations hereunder, PROMOTER shall endeavor to book WRESTLER in wrestling matches at various Events, and during the term of this Agreement PROMOTER guarantees WRESTLER a minimum of ten (10) bookings per year at PROMOTER's own Events.

7

## 2. PROGRAMS

2.1     WRESTLER hereby grants to PROMOTER and PROMOTER hereby accepts, the exclusive right during the term of this Agreement to video tape, film, photograph, or otherwise record, or to authorize others to do so, by any media now known or hereafter created, any or all of the Events. (These recordings by tape, disc, film, or otherwise are collectively referred to herein as "Programs").

2.2     PROMOTER may produce, reproduce, manufacture, record, perform, exhibit, broadcast, televise by any form of television (including without limitations, free, cable, pay cable, closed circuit and pay-per-view television), transmit, publish, copy, print, reprint, vend, sell, distribute and use, and to authorize others to do so, the Programs in perpetuity and in any manner or media and by any art, method or device, now known or hereafter created (including without limitation, by means of videodisc, videocassette, theatrical motion picture and non-theatrical motion picture).

2.3.    PROMOTER shall own in perpetuity all of the rights, results, products and proceeds in and to, or derived from the Programs (including without limitation, all incidents, dialogue, characters, actions, gags, routines, ideas, titles, inventions, and other material written, composed, submitted, added, improvised, interpolated and invented by WRESTLER in connection with his/her appearance in the Programs) and to obtain copyright and/or trademark protection therefor in the name of PROMOTER or PROMOTER's designee.

## 3. TRADEMARKS

3.1     WRESTLER hereby assigns in good faith to PROMOTER and PROMOTER hereby accepts, the exclusive right during the term of this Agreement, to use WRESTLER's service marks, trademarks and any and all of his/her other distinctive and identifying indicia, including but not limited to his/her legal name, his/her ring name, likeness, voice, signature, costumes, props, gimmicks, gestures, routines, themes, personality, character, and caricatures as used by or associated with WRESTLER in the business of professional wrestling, (collectively the "Intellectual Property"). It is the intention of the parties that the assignment granted with respect to Intellectual Property is exclusive to PROMOTER during the term hereof, even to the exclusion of WRESTLER, and includes the right to sublicense, promote, expose, exploit and otherwise use the Intellectual Property in any commercial manner now known or hereafter discovered.

3.2     If WRESTLER does not own, possess or use service marks, trademarks or distinctive and identifying indicia and PROMOTER develops such service marks, trademarks, and distinctive and

T-JH 00050

WWE/WAR 001507

identifying indicia for WRESTLER, they shall belong to PROMOTER and PROMOTER shall have the exclusive license and right in perpetuity, to use, and to authorize others to use, WRESTLER's ring name, likeness, voice, signature, costumes, props, gimmicks, gestures, routines, themes, personality, character and caricatures as used by or associated with WRESTLER's performance as a professional wrestler (collectively "Name and Likeness"). It is the intention of the parties that the assignment with respect to Name and Likeness belongs to PROMOTER in perpetuity, even to the exclusion of WRESTLER, and the assignment includes the right to sublicense, promote, expose, exploit and otherwise use the Name and Likeness in any commercial manner now known or hereinafter discovered.

3.3     WRESTLER agrees to cooperate fully and in good faith with PROMOTER for the purpose of securing and preserving their respective rights in and to the trademarks, service marks, Intellectual Property, and Name and Likeness. At PROMOTER's expense and request PROMOTER and WRESTLER shall take such steps as PROMOTER deems necessary for any registration or any litigation or other proceeding, to protect their respective rights in such service marks, trademarks or other Intellectual Property, and Name and Likeness.

### 4. MERCHANDISING

4.1     WRESTLER hereby grants to PROMOTER, and PROMOTER hereby accepts, the exclusive right during the term of this Agreement to use the Intellectual Property and/or Name and Likeness to manufacture, have manufactured, print, produce, reproduce, broadcast, rebroadcast, distribute, sell, and otherwise commercially exploit and use, any and all copyrightable material, goods, or merchandise, or any other item containing copyrightable material; and, as to all such items created and produced during the term of this Agreement, PROMOTER shall have exclusive right in perpetuity, to sell and/or distribute them. By way of example and not of limitation, such items include t-shirts, posters, photos, television rights, video tapes and video cassettes, dolls, books, biographies, articles and stories, and any other such copyrightable material or item relating to WRESTLER or his/her performance as a professional wrestler. It is the intention of the parties that this grant is exclusive to PROMOTER even to the exclusion of WRESTLER. PROMOTER shall own all copyrights in any and all such materials, goods, merchandise and items and shall be entitled to obtain registrations thereof in its own name, and wrestler shall provide all reasonable assistance to PROMOTER in so obtaining such copyrights.

4.2     WRESTLER hereby grants to PROMOTER, and PROMOTER hereby accepts, the identical rights described in paragraph 4.1 above for non-copyrightable material and items, such as key chains, pens, etc., upon the same terms and conditions as stated in paragraph 4.1. It is the intention of the parties that this

T-JH 00051

WWE/WAR 001508

grant is exclusive to PROMOTER, even to the exclusion of WRESTLER.

## 5. EXCLUSIVITY

5.1     It is the understanding of the parties that all rights, licenses, privileges and all other items herein given or granted to PROMOTER during the term of this Agreement are exclusive to the PROMOTER even to the exclusion of WRESTLER.

5.2     In the event WRESTLER desires to participate in any commercial activity in which PROMOTER is not otherwise engaged, and WRESTLER's participation in such activity requires use of his/her Intellectual Property or Name and Likeness, PROMOTER may at its discretion, upon WRESTLER's written request, execute a sublicense to WRESTLER for the limited purpose of authorizing WRESTLER to participate in such specific commercial activity upon mutually agreeable terms and conditions. PROMOTER's Sublicense to WRESTLER shall constitute an exception to paragraphs 3 and 4 herein, solely with respect to WRESTLER's participation in such specific commercial activity and shall not license, sublicense, authorize, grant or permit any other or further appropriation or infringement of PROMOTER's rights whatsoever.

## 6. TERM AND TERRITORY

6.1     The term of the Agreement shall be two (2) years from the date hereof. Thereafter, this Agreement shall automatically renew for successive one year terms, unless either party shall serve written notice to the other party at least ninety (90) days' prior to the end of the term of this Agreement of such party's decision to terminate this Agreement as at the end of the term. Reference herein to the term hereof means the original term and any such renewal or extended term. During any such extended term, all rights, duties, obligations, and privileges hereunder shall continue as stated herein. Notwithstanding anything herein to the contrary, termination of this Agreement shall not affect PROMOTER's ownership of and rights to any Programs; the rights, results, products, and proceeds in and to and derived from WRESTLER's performance as a professional wrestler during the term of this Agreement; and the exploitation of the rights set forth in Paragraphs 1, 2, 3 and 4 hereof in any and all media now known or hereafter developed; and any Agreement concerning any and all of the Rights to WRESTLER's Name and Likeness.

6.2     The territory of this Agreement shall be the world.

- 5 -

## 7. PAYMENTS

7.1     If WRESTLER appears in any Event in an arena before a live audience at which admission is charged other than those arena events which are taped for promotional purposes pursuant to paragraph 7.2 hereof, he/she shall be paid by PROMOTER an amount equal to such percentage of the gate receipts for such Event as is consistent with the nature of the match in which WRESTLER appears, i.e., preliminary bout, main event, etc.; the prevailing practices of the United States professional wrestling community; and any standards PROMOTER or others establish specifically for such Event. However, such amount shall not be less than One Hundred Fifty ($150.00) Dollars, per Event.

7.2     If WRESTLER renders his/her service in connection with an arena or studio event which is taped for promotional use on PROMOTER's television network or otherwise, he/she shall be paid by PROMOTER an amount not less than Fifty Dollars ($50.00) for each day, if any, on which WRESTLER renders services hereunder in connection with the production of such promotional television show(s)/spots.

7.3     In the event WRESTLER's Intellectual Property and/or Name and Likeness are licensed, sublicensed, or otherwise assigned to third parties for reproduction and/or sale and distribution, in conjunction with any copyrightable material or items, pursuant to paragraph 4.1 hereof, or non-copyrightable material or items, pursuant to paragraph 4.2 hereof (hereinafter "Licensed Products"), such that the applicable product features WRESTLER's Intellectual Property and/or Name and Likeness only, WRESTLER shall receive twenty-five percent (25%) of "Licensed Products' Net Receipts" received by PROMOTER with respect to any such licensing, sublicensing or assignment. Licensed Products' Net Receipts means the gross amount received by PROMOTER less expenses incurred by PROMOTER's licensing agent for the applicable product.

        If WRESTLER's Intellectual Property and/or Name and Likeness are licensed, sublicensed, or otherwise assigned to third parties in connection with Licensed Products featuring WRESTLER with other wrestlers represented by PROMOTER, PROMOTER shall allocate and prorate the amount of compensation paid to WRESTLER pursuant to this paragraph 7.3, based upon the number of wrestlers whose Intellectual Property and/or Name and Likeness are so exploited.

7.4     In the event WRESTLER's Intellectual Property and/or Name and Likeness are licensed, sublicensed or assigned for non-wrestling personal appearances and performances such as personal appearances for advertising or non-wrestling promotional purposes, radio and television commercials, movies, etc., WRESTLER shall be paid an amount to be mutually agreed to by WRESTLER and by PROMOTER of the "Personal Appearance Net Receipts" received by PROMOTER. Personal Appearance Net Receipts

T-JH 00053

WWE/WAR 001510

means the amount received by PROMOTER after payment of and provision for all costs and expenses, except income taxes.

7.5     In the event any other products developed by Promoter pursuant to paragraph 4.1 or 4.2 above are exploited directly through Arena Sales, and/or Mail Order Sales (hereinafter "Direct Sales Products"), such that the applicable product features WRESTLER's Intellectual Property and/or Name and Likeness only, WRESTLER shall receive an amount equal to five percent (5%) of the "Direct Sales Products' Net Receipts" derived by PROMOTER from such exploitation. Direct Sales Products' Net Receipts means the gross amount received by PROMOTER for sales of such products sold at Arenas and/or via Mail Order after deduction of local taxes and applicable arena commission(s) allocated for concession sales.

In the event WRESTLER's Intellectual Property and/or Name and Likeness are exploited by PROMOTER such that Direct Sales Products feature WRESTLER's Intellectual Property and/or Name and Likeness with other wrestlers represented by PROMOTER, PROMOTER shall allocate and prorate the amount paid to WRESTLER pursuant to this paragraph 7.5, based upon the number of wrestlers whose Intellectual Property and/or Name and Likeness are so exploited.

7.6     In the event WRESTLER is a featured performer whose Intellectual Property and/or Name and Likeness are exploited with other wrestlers represented by PROMOTER in the videos made of Pay-Per-View Specials such as "Wrestlemania," "Royal Rumble," "Summerslam" and "Survivor Series" (hereinafter "WWF Video Specials"), PROMOTER shall allocate and prorate twenty-five percent (25%) of the "WWF Video Specials' Net Receipts" paid to PROMOTER by Licensee based upon the total amount paid to the wrestlers for the live event whose Intellectual Property and/or Name and Likeness are so exploited. WWF Video Specials' Net Receipts mean the gross amount received by PROMOTER from its Licensees less all costs, if any, incurred by PROMOTER to produce the applicable WWF Video Special.

7.7     In the event WRESTLER is a featured performer whose Intellectual Property and/or Name and Likeness are exploited with other wrestlers represented by PROMOTER, in non-pay-per-view video programs such as "Best of WWF" and "Saturday Night's Main Event" (hereinafter "WWF Series"), PROMOTER shall allocate and prorate twenty-five percent (25%) of the "WWF Series' Net Receipts" paid to PROMOTER from its licensees based upon the number of wrestlers whose Intellectual Property and/or Name and Likeness are so exploited. WWF Series' Net Receipts mean the gross amount received by PROMOTER from its licensees less expenses, if any, incurred by PROMOTER in connection with production of the applicable WWF Series.

- 7 -

T-JH 00054

WWE/WAR 001511

7.8     In the event WRESTLER's Intellectual Property and/or Name and Likeness are featured exclusively (as described below) in videodiscs or cassettes (hereinafter "Video Products"), WRESTLER shall receive an amount equal to twelve and one-half percent (12-1/2%) of the "Video Net Receipts" derived by PROMOTER for such exploitation. The remaining twelve and one-half percent (12-1/2%) royalty allocation will be prorated among the other wrestlers who appear incidentally on the Video Products but who are not the featured WRESTLER. Video Net Receipts mean the gross amount received by PROMOTER from its licensees less all costs, if any, incurred by PROMOTER to produce the applicable Video Product.

An Exclusive Feature shall mean that the WRESTLER is shown in each and every match on the Video Product. WRESTLER is entitled to the payment provided for above only for those Video Products which feature him/her exclusively, i.e., "Roddy Piper," or "Andre the Giant," or on those Video Products which feature a tag team or group to which WRESTLER belongs, i.e., the "Hart Foundation." Relative to a tag team or group appearing on a Video Product, the remaining twelve and one-half percent (12-1/2%) royalty will be prorated among the wrestlers according to the number of wrestlers in the featured group.

7.9     It is the understanding of the parties that WRESTLER shall not be paid anything for PROMOTER's exploitation of his/her Intellectual Property and/or Name and Likeness in PROMOTER's wrestling magazine known as the <u>WWF Official Magazine</u>, or any of PROMOTER's other magazines, which PROMOTER may publish, produce or distribute at arenas, at newsstands and/or by mail.

+7.10    All payments made to WRESTLER are in full <u>without</u> withholding of any Federal, state or local income taxes, and/or any social security, FICA or FUTA taxes. After the end of each calendar year, PROMOTER shall issue to WRESTLER Internal Revenue Service Form 1099 showing all payments to WRESTLER.

7.11    Statements as to royalties payable hereunder shall be sent by PROMOTER to WRESTLER within ninety (90) days following the end of each quarter-annual period together with payment of royalties, if any, earned by WRESTLER hereunder during such quarter-annual period, less advances and/or debits made by PROMOTER on WRESTLER's behalf.

(a) WRESTLER shall be deemed to have consented to all royalty Statements and all other accountings rendered by PROMOTER hereunder and each such royalty statement or other accounting shall be conclusive, final, and binding, shall constitute an account stated, and shall not be subject to any objection for any reason whatsoever unless specific, objection in writing, stating the basis thereof, is given by WRESTLER to PROMOTER within one (1) year from the date rendered.

TJH 00055

WWE/WAR 001512

(b) PROMOTER shall maintain books of account related to the payment of royalties hereunder at its principal place of business in Stamford, Connecticut. WRESTLER, or WRESTLER's designated independent certified public accountant who is a member in good standing of the AICPA, may at WRESTLER's sole expense examine and copy PROMOTER's books insofar as they pertain to this Agreement for the purpose of verifying the accuracy thereof, during PROMOTER's normal business hours and upon reasonable notice.  Such audit shall be conducted in a manner that will not unreasonably interfere with PROMOTER's normal business operations.  WRESTLER shall not audit PROMOTER's books and records more than once during any calendar year of the term hereof and such audit may not continue for more than thirty (30) days.  Statements may be changed from time to time to reflect year-end adjustments, to correct errors and for similar purposes.

## 8. PROMOTER'S OBLIGATIONS

8.1     PROMOTER shall be responsible for obtaining all appropriate licenses to conduct professional wrestling exhibitions.

8.2     PROMOTER shall bear the following costs in connection with the development and enhancement of the value of WRESTLER's performance as professional WRESTLER and his/her standing in the professional wrestling community, all of which shall inure to the benefit of WRESTLER:

(a) In connection with WRESTLER's appearances at Events staged before a live audience, PROMOTER shall bear the cost of location rental, PROMOTER's third party comprehensive liability insurance for the benefit of the venues, applicable state and local admission taxes, promotional assistance, sound and light equipment, wrestling ring, officials, police and fire protection, and such additional security guards as PROMOTER shall require in its discretion to protect WRESTLER'S safety during his/her performance in a professional wrestling match;

(b) In connection with the production, distribution, and exploitation of the Programs, PROMOTER shall bear all costs incurred in connection with such production, distribution, broadcast, transmission or other forms of mass media communication.

(c) In connection with any licensing activities and/or merchandising activities, PROMOTER shall bear all costs of negotiating, securing or otherwise obtaining the licensing arrangements, including costs of agents, consultants, attorneys and others involved in making the licensing arrangements; and PROMOTER shall bear all costs of creating, designing, developing, producing and marketing merchandise.  In order to fulfill these obligations, PROMOTER may make any arrangements, contractual or

WWE/WAR 001513

otherwise, it deems appropriate to delegate, assign, or otherwise transfer its obligations.

8.3     PROMOTER shall schedule events and book WRESTLER for Events. In doing so, PROMOTER shall select the time and location of the Events at which WRESTLER is booked, WRESTLER's opponent, and any other wrestlers who will appear at such Event. PROMOTER shall provide WRESTLER with reasonable advance notice of the date, time, and place of any such Event, and WRESTLER shall appear at the designated location for any such Event no later than one hour before the designated time. If WRESTLER fails to appear as required without advance 24 hour notice to PROMOTER and PROMOTER must substitute another wrestler to appear in WRESTLER's place at the Event, then WRESTLER shall be subject to a fine to be determined by PROMOTER.

8.4     Notwithstanding the above, if WRESTLER shall be prevented from appearing at an Event by reason of Force Majeure, the above fine shall not be imposed. For purposes of this Agreement, Force Majeure shall mean any act of God, fire, flood, war or other calamity; a strike or labor difficulties; any governmental action or any other serious emergency affecting WRESTLER which occurrence is beyond WRESTLER's reasonable control, and, which despite his/her best efforts prohibits his/her performance or appearance at such Event.

### 9. WRESTLER'S OBLIGATIONS

9.1     WRESTLER shall bear responsibility for obtaining all appropriate licenses to engage in, participate in, or otherwise appear in professional wrestling exhibitions.

9.2     WRESTLER shall be responsible for his/her own training, conditioning, and maintenance of wrestling skills and abilities, as long as they do not interfere with WRESTLER's appearance at scheduled events as follows:

    (a) WRESTLER shall establish his/her own training program, shall select time of training, duration of training, exercises, pattern of exercise and other actions appropriate to obtaining and maintaining his/her physical fitness for wrestling. WRESTLER shall select his/her own training apparatus, including mats, weights, machines and other exercise paraphernalia. WRESTLER is responsible for supplying his/her own training facilities and equipment, whether by purchase, lease, license, or otherwise.

    (b) WRESTLER shall establish his/her own method of physical conditioning, shall select time for conditioning, duration of conditioning and form of conditioning. WRESTLER shall select his/her time for sleep, time for eating, and time for other activities. WRESTLER shall select his/her own foods, vitamins and other ingested items, excepting illegal and/or controlled substances and drugs.

9.3     WRESTLER shall be responsible for supplying all wardrobe, props, and make-up necessary for the performance of WRESTLER's services at any Event at which WRESTLER appears and for any costs incurred in connection with his/her transportation to and from any such Events (except those transportation costs which are covered by PROMOTER's current travel policy), as well as the costs of food consumed and hotel lodging utilized by WRESTLER in connection with his/her appearance at such Events.

9.4     WRESTLER shall use his/her skills and talents as a professional wrestler and be responsible for developing and executing the various details, movements, and maneuvers of each match consistent with and complying with all requirements, directions and requests made by PROMOTER in connection with the booking of WRESTLER at scheduled Events.

9.5     WRESTLER agrees to cooperate and assist without any additional payment in the publicizing, advertising and promoting of scheduled Events, and to appear at and participate in a reasonable number of joint and/or separate press conferences, interviews, and other publicity or exploitation appearances or activities (any or all of which may be filmed, taped, or otherwise recorded, telecast by any form of television now known or hereafter created, including without limitation free, cable, pay cable, and closed circuit and pay-per-view television, broadcast, exhibited, distributed, and used in any manner or media and by any art, method, or device now known or hereafter created, including without limitation by means of videodisc, video cassette, theatrical motion picture and/or non-theatrical motion picture), at times and places designated by PROMOTER. WRESTLER will receive no additional compensation in connection therewith.

9.6     WRESTLER shall use his/her best efforts in the ring in the performance of wrestling services for a match or other activity, in order to provide an honest exhibition of his/her wrestling skills and abilities, consistent with the customs of the professional wrestling industry; and WRESTLER agrees all matches shall be finished in accordance with the PROMOTER's direction. Breach of this paragraph shall cause a forfeiture of any payment due WRESTLER, pursuant to paragraph 7.1, for the Event at which the breach occurs and shall terminate PROMOTER's guarantee as provided in paragraph 1.2 above, as well as all other obligations of PROMOTER to WRESTLER hereunder, but such breach shall not terminate PROMOTER's licenses and other rights hereunder during the term hereof.

9.7     WRESTLER acknowledges the right of PROMOTER to make decisions with respect to the preparation and exploitation of the Programs or the exercise of any other rights respecting Intellectual Property or Name and Likeness, and in this connection WRESTLER acknowledges and agrees that PROMOTER's decision with respect to any agreements disposing of the rights

to WRESTLER's Intellectual Property and/or Name and Likeness are final, except as to WRESTLER's legal name, which PROMOTER may only dispose of upon WRESTLER's consent. WRESTLER agrees to execute any agreements PROMOTER deems necessary in connection with any such agreements, and if WRESTLER is unavailable or refuses to execute such agreements, PROMOTER is hereby authorized to do so in WRESTLER's name as WRESTLER's attorney-in-fact.

9.8     WRESTLER agrees to cooperate fully and in good faith with PROMOTER to obtain any and all documentation, applications or physical examinations as may be required by any governing authority with respect to WRESTLER'S appearance and/or performance in a professional wrestling match.

9.9     WRESTLER shall indemnify and defend PROMOTER and PROMOTER's licensees, assignees, and affiliates and their respective officers, directors, employees, and representatives and hold each of them harmless against any claims, demands, liabilities, actions, costs, suits, proceedings or expenses, incurred by any of them by reason of WRESTLER'S breach or alleged breach of any warranty, undertaking, representation, agreement, or certification made or entered into herein or hereunder by WRESTLER. And, WRESTLER shall indemnify and defend PROMOTER against any and all claims arising out of WRESTLER'S acts, transactions and/or conduct within or around the ring, hallways, dressing rooms, parking lots, or other areas within or in the immediate vicinity of the facilities where PROMOTER has scheduled Events at which WRESTLER is booked.

9.10    WRESTLER shall be responsible for payment of all his/her own Federal, state or local income taxes; all social security, FICA and FUTA taxes, if any, as well as all contributions to his retirement plans and programs, or other supplemental income plan or program that would provide WRESTLER with personal or monetary benefits upon his retirement from professional wrestling.

9.11    (a) WRESTLER shall be responsible for his/her own commercial general liability insurance, workman's compensation insurance, professional liability insurance and as well as any excess liability insurance, as he/she deems appropriate to insure, indemnify and defend WRESTLER with respect to any and all claims arising out of his/her own acts, transactions, or conduct as a professional wrestler.

(b) WRESTLER acknowledges that the participation and activities required by WRESTLER in connection with his/her performance in a professional wrestling exhibition may be dangerous and may involve the risk of serious bodily injury. WRESTLER knowingly and freely assumes full responsibility for all such risks whether due to the negligence of PROMOTER or otherwise.

T-JH 00059

WWE/WAR 001516

(c) WRESTLER hereby releases, waives and discharges PROMOTER from all liability to WRESTLER and covenants not to sue PROMOTER for any and all loss or damage on account of injury to the person or property or resulting in serious or permanent injury to WRESTLER or in WRESTLER'S death, whether caused by the negligence of the PROMOTER or otherwise.

(d) WRESTLER acknowledges that the foregoing release, waiver and indemnity is intended to be as broad and inclusive as permitted by the law of the State, Province or Country in which the professional wrestling exhibition or Events are conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full force and effect.

9.12 (a) WRESTLER may at his/her election obtain health, life and/or disability insurance to provide benefits in the event of physical injury arising out of his/her professional activities; and WRESTLER acknowledges that PROMOTER shall not have any responsibility for such insurance or payment in the event of physical injury arising out of his/her professional activities.

(b) In the event of physical injury arising out of WRESTLER'S professional activities, WRESTLER acknowledges that he/she is not entitled to any workman's compensation coverage or similar benefits for injury, disability, death or loss of wages; and WRESTLER shall make no claim against PROMOTER for such coverage or benefit.

9.13 WRESTLER shall act at all times with due regard to public morals and conventions during the Term of this Agreement. If WRESTLER shall have committed or shall commit any act or do anything that is or shall be an offense or violation involving moral turpitude under Federal, state or local laws, or which brings him/her into public disrepute, contempt, scandal or ridicule, or which insults or offends the community or any employee, agent or affiliate of PROMOTER or which injures his/her reputation or diminishes the value of his/her professional wrestling services to the public or PROMOTER then at the time of any such act, or any time after PROMOTER learns of any such act, PROMOTER shall have the right to fine WRESTLER in an amount to be determined by PROMOTER, in addition to its other legal and equitable remedies, and/or to suspend and/or terminate this Agreement forthwith.

## 10. WARRANTY

10.1 WRESTLER represents, warrants, and agrees that he/she is free to enter into this Agreement and to grant the rights and licenses herein granted to PROMOTER; he/she has not heretofore entered and shall not hereafter enter into any contract or agreement which is in conflict with the provisions hereof or which would or might interfere with the full and complete

T-JH 00060

WWE/WAR 001517

performance by WRESTLER of his/her obligations hereunder or the free and unimpaired exercise by PROMOTER of any of the rights and licenses herein granted to it; WRESTLER further represents and warrants there are not pending claims or litigation affecting WRESTLER which would or might interfere with the full and complete exercise or enjoyment by PROMOTER of any rights and licenses granted hereunder. Any exceptions to this Warranty are set forth in Exhibit A, attached hereto.

10.2     WRESTLER represents, warrants and agrees that he/she is in sound mental and physical condition; that he/she is suffering from no disabilities that would impair or adversely affect his/her ability to perform professional wrestling services; and that he/she is free from the influence of illegal drugs or controlled substances, which can threaten his/her well being and pose a risk of injury to himself/herself or others. To insure compliance with this warranty, WRESTLER shall abide by PROMOTER's Drug Policy for Wrestlers and consents to the sampling and testing of his/her urine in accordance with such policy. In addition, WRESTLER agrees to submit annually to a complete physical examination by a physician either selected or approved by PROMOTER.

## 11.  EARLY TERMINATION

11.1     This Agreement may be terminated prior to the end of its term by a written instrument executed by each of the parties expressing their mutual consent to so terminate without any further liability on the part of either. In the event of such early termination, WRESTLER hereby waives any claims to future compensation or payments in connection with revenues derived from use of the Intellectual Property and/or Name and Likeness subsequent to such termination.

11.2     This Agreement will be terminated by WRESTLER's death during the term.

## 12.  BREACH

12.1     In the event PROMOTER breaches this Agreement, WRESTLER may recover such actual direct damages as may be established in any Court of law having jurisdiction of the parties and the subject matter.

12.2     In the event WRESTLER breaches this Agreement, PROMOTER may recover such actual direct damages as may be established in a court of law having jurisdiction of the parties and the subject matter, as provided in paragraph 13.8. In addition, WRESTLER shall forfeit any future payments due pursuant to paragraphs 7.3, 7.4, 7.5, and 7.6, 7.7 and 7.8; WRESTLER shall not appear under, use or exploit in any manner, parenthetically or otherwise, his/her Intellectual Property (except for his/her legal name) for the remaining term of this Agreement; and WRESTLER shall not

appear under, use or exploit in any manner, parenthetically or otherwise his/her Name and Likeness forever.

12.3     The parties further agree that because of the special, unique, and extraordinary nature of the obligations of PROMOTER and WRESTLER respecting all rights and licenses concerning bookings, promoting, programs, Events, Intellectual Property and/or Name and Likeness, which are the subject matter of this agreement, WRESTLER's breach of this Agreement shall cause PROMOTER irreparable injury which cannot be adequately measured by monetary relief; as a consequence PROMOTER shall be entitled to injunctive and other equitable relief against WRESTLER to prevent WRESTLER's breach or default hereunder and such injunction or equitable relief which shall be without prejudice to any other rights, remedies or damages which PROMOTER is legally entitled to obtain.

12.4     In no circumstances, whatsoever, shall either party to this Agreement be liable to the other party for any punitive or exemplary damages; and all such damages, whether arising out of the breach of this Agreement, or otherwise, are expressly waived.

### 13.  MISCELLANEOUS

13.1     Nothing contained in this Agreement shall be construed to constitute WRESTLER as a partner or joint venturer of PROMOTER, nor shall WRESTLER have any authority to bind PROMOTER in any respect.  WRESTLER is an independent contractor and WRESTLER shall execute and hereby irrevocably appoints PROMOTER his/her attorney-in-fact to execute, if WRESTLER refuses to do so, any instruments necessary to accomplish or confirm the foregoing.

13.2     This Agreement contains the entire understanding of the parties with respect to the subject matter hereof and all prior understandings, negotiations and agreements are merged in this Agreement.  There are no other agreements, representations, or warranties not set forth herein with respect to the subject matter hereof; and the parties expressly acknowledge that any representation, promise or inducement by any party to any other party that is not embodied in this Agreement is not part of this Agreement, and they agree that no party shall be bound by or liable for any such alleged representation, promise or inducement not set forth herein.

13.3     This Agreement may not be changed or altered except in writing signed by PROMOTER and WRESTLER.

13.4     Any term or provision of this Agreement which is invalid or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such invalidity or unenforceability without rendering invalid or unenforceable the

T-JH 00062

WWE/WAR 001519

Case 2:06-cv-00535-ROS   Document 180-9   Filed 05/15/09   Page 16 of 18

remaining terms and provisions of this Agreement, or affecting the validity or enforceability of any of the terms or provisions of this Agreement in any other jurisdiction.

13.5   PROMOTER shall have the right to assign, license, or transfer any or all of the rights granted to and hereunder to any firm or corporation, and if any assignee shall assume in writing PROMOTER's obligations hereunder, PROMOTER shall have no further obligations to WRESTLER. WRESTLER may not assign, transfer or delegate his/her rights or obligations hereunder and any attempt to do so shall be void.

13.6   Any notices required or desired hereunder shall be in writing and sent postage prepaid by certified mail, return receipt requested, or by prepaid telegram addressed as follows, or as the parties may hereafter in writing otherwise designate:

> Titan Sports, Inc.
> ATTENTION: President
> 1241 E. Main Street
> P.O. Box 3857
> Stamford, Connecticut 06902

TO WRESTLER:

> James Hellwig
> 6229 East Via
> Los Caballos
> Paradise Valley, Arizona 85253

The date of mailing shall be deemed to constitute the date of service of any such notice.

13.7   This Agreement is made in Connecticut and shall be governed by and interpreted in accordance with the laws of the State of Connecticut.

13.8   In the event that there is any claim, dispute, or other matter in question arising out of or relating to this Agreement, the enforcement of any provisions therein, or breach of any provision thereof, it shall be submitted to the Federal, state or local courts, as appropriate, only in the State of Connecticut. This provision to submit all claims, disputes or matters in question to the Federal or state courts in the State of Connecticut shall be specifically enforceable; and each party, hereby waiving personal service of process and venue, consents to jurisdiction in Connecticut for purposes of any other party seeking or securing any legal and/or equitable relief.

13.9   In the event that any legal action or any other proceeding is commenced to enforce any provision of this Agreement or as a result of a dispute, breach, default or

- 16 -

TJH 00063

WWE/WAR 001520

misrepresentation in conjunction with this Agreement, the successful or prevailing party shall be entitled, in addition to any other relief, to recover all costs of litigation, including expert fees and reasonable attorneys' fees incurred in such action or proceeding; and all such costs and fees shall be made part of the judgment.

## 14. CONFIDENTIALITY

14.1     Other than as may be required by applicable law, government order or regulation; or by order or decree of the court, the parties agree that neither of them shall publicly divulge or announce, or in any manner disclose, to any third party, any of the specific terms and conditions of this Agreement; and both parties warrant and covenant to one another that none of their officers, directors, employees or agents will do so either.

14.2     Each party acknowledges that he/she has read this Agreement; that he/she understands the terms and conditions set forth therein; and that his/her execution of this Agreement is a voluntary act by which he/she intends to be legally bound in a court of law.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

TITAN SPORTS, INC.
BY: _____
Title:

James Hellwig
WRESTLER's legal name or professional corporation

Ultimate Warrior
Wrestler's Ring Name

_____
WRESTLER's signature and title, if a professional corporation

- 17 -

T-JH 00064

WWE/WAR 001521

STATE OF CONNECTICUT )
                     ) ss:
COUNTY OF FAIRFIELD  )

I, _Kelley Brow_____, a Notary Public for said County and State, do hereby certify that _James Hellwig_, _____ of Titan Sports, Inc., personally appeared before me this day and acknowledged the due execution of the foregoing instrument to be his/her free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this _2ND_ day of _April_, 1992.

_Kelley Brown_
Notary Public

My commission expires: _February 6, 1994_


STATE OF _New Mexico_ )
                      ) ss:
COUNTY OF _Santa Fe_  )

I, _Kelley Brown_____, a Notary Public for said County and State, do hereby certify that James Hellwig a/k/a "Ultimate Warrior" personally appeared before me this day and acknowledged the due execution of the foregoing instrument to be his/her free act and deed for the purposes therein expressed.

WITNESS my hand and notarial seal this _2ND_ day of _April_, 1992.

_Kelley Brown_
Notary Public

My commission expires: _February 6, 1994_

- 18 -