1    HEBERT, SCHENK & JOHNSEN, P.C.
     1440 E. Missouri Avenue
2    Missouri Commons Suite 125
     Phoenix, Arizona 85014
3    Telephone: (602) 248-8203
     Facsimile: (602) 248-8840
4
     Shawn K. Aiken - 009002
5    Philip R. Rupprecht - 009288
6    HART, BAXLEY, DANIELS & HOLTON
     59 John Street
7    New York, New York 10038
     Telephone: (212) 791-7200
8
     Charles E. Baxley
9    Joseph T. Murray
     Ira Cohen
10
     Attorneys for Plaintiffs WARRIOR
11   and ULTIMATE CREATIONS, INC.

12

13                  SUPERIOR COURT, STATE OF ARIZONA

14                        COUNTY OF MARICOPA

15

16   WARRIOR and ULTIMATE CREATIONS,
     INC.,                                    Cause No.        CV96-13377
17
                        Plaintiffs,
18                                            COMPLAINT
     V.
19                                            Jury Trial Demanded
     TITAN SPORTS, INC.; WORLD
20   WRESTLING FEDERATION; VINCENT K.
     McMAHON and LINDA McMAHON,
21   husband and wife; INTERNATIONAL
     PROMOTIONS, INC.; STANLEY
22   TORGERSON; MACFRUGALS BARGAINS
     CLOSE OUTS, INC.; and JOHN DOE 1-15,
23
                        Defendants.
24

25

26

27

28

Plaintiffs WARRIOR, and ULTIMATE CREATIONS, INC., by their attorneys Hebert, Schenk, & Johnsen, P.C. and Hart, Baxley, Daniels & Holton, for their complaint allege:

**PARTIES:**

1.  Plaintiff WARRIOR (formerly known as James Hellwig and hereinafter referred to as "WARRIOR") is an individual residing and doing business in the State of Arizona, County of Maricopa.

2.  Plaintiff ULTIMATE CREATIONS, INC. (hereinafter referred to as "ULTIMATE CREATIONS") is a corporation duly organized under the laws of the State of Arizona, having its principal place of business at 8711 East Pinnacle Peak Road, Scottsdale, Arizona 85255. At all relevant times, ULTIMATE CREATIONS was and is engaged in, among other things, a business of creating, producing, marketing, merchandising, and otherwise commercially exploiting educational services in the field of wrestling as well as a wide variety of products in the entertainment industry.

3.  Defendant TITAN SPORTS, INC., ("TITAN"), is upon information and belief, a corporation organized and existing under the laws of the State of Connecticut, with a principal place of business at 1241 East Main Street, Stamford, Connecticut 06902. Upon information and belief, at all relevant times, TITAN was and continues to be in a business of, among other things, producing, distributing, and otherwise commercially exploiting entertainment services in the field of professional wrestling as well as a wide variety of products related thereto. Upon information and belief, and on that basis, plaintiffs allege that, TITAN regularly does business in the State of Arizona and in this county and is subject to personal jurisdiction of the courts of this State.

4.  Upon information and belief, defendant TITAN also conducts business under an assumed name WORLD WRESTLING FEDERATION, ("WWF"), and for purposes of this complaint any references to defendant TITAN will include WWF.

5.  Upon information and belief, TITAN is a privately-owned company controlled and operated by Vincent K. McMAHON ("McMAHON") and Linda McMahon, his wife (hereinafter sometimes referred to collectively as "McMAHON"), who are, upon information and belief, individuals residing and doing business in the State of Connecticut. Upon information and belief, and on that basis, plaintiffs allege that, at all relevant times defendant McMAHON regularly does business in the State of Arizona and in this county and is subject to the personal jurisdiction of the courts of this State.

6.     Defendant INTERNATIONAL PROMOTIONS, INC., ("INTERNATIONAL PROMOTIONS"), is upon information and belief, a corporation organized and existing under the laws of the State of Arizona, with a principal place of business at 1265 South Gilbert Road, Gilbert, Arizona 85296. Upon information and belief, at all relevant times, INTERNATIONAL PROMOTIONS was and continues to be in a business of, among other things, organizing, promoting,, and televising monster truck racing events as well as selling, distributing, and otherwise commercially exploiting a wide variety of related merchandising products to consumers.  Upon information and belief, and on that basis, plaintiffs allege that  INTERNATIONAL PROMOTIONS regularly does business in the State of Arizona and this county and is subject to the personal jurisdiction of the courts of this State.

7.     Defendant Stanley Torgerson ("TORGERSON") is, upon information and belief, an individual residing and doing business in the State of Arizona.  Upon information and belief, and on that basis, plaintiffs allege that, at all relevant times defendant TORGERSON regularly does business in the State of Arizona and in this county and is subject to the personal jurisdiction of the courts of this State.

8.     Defendant MACFRUGALS BARGAINS CLOSE OUTS, INC., ("MACFRUGALS"), is upon information and belief, a corporation organized and existing under the laws of the State of California, with a principal place of business at various locations in the City of Phoenix, State of Arizona, including 3144 East Thomas Road, 5010 West Indian School Road, and 3213 East Cactus Road. Upon information and belief, at all relevant times, MACFRUGALS was and continues to be in a business of, among other things, selling, distributing, and otherwise commercially exploiting a wide variety of merchandising products to consumers. Upon information and belief, and on that basis, plaintiffs allege that, defendant MACFRUGALS regularly does business in the State of Arizona and in this county and is subject to personal jurisdiction of the courts of this State.

9.     Plaintiffs are ignorant of the true names and capacities of defendants named herein as Doe 1 through 15 (hereinafter "DOE 1-15"), inclusive, and therefore sue said defendants by such fictitious names.  The plaintiffs seek leave of court to amend this complaint to show true names of DOE 1-15 and capacities thereof, when they have been ascertained.  Plaintiffs are informed and believe, and on that basis allege that at all times relevant hereto, each of the defendants designated as DOE 1-15 is responsible in some manner for the events and happenings referred to herein.  Upon information and belief, DOE 1-15 regularly do business in the State of Arizona and in this county and are subject to personal jurisdiction of the courts of this State.

10.     Plaintiffs are informed and believe, and on that basis, allege that at all times relevant hereto, all of the foregoing defendants, whether named or unnamed, were agents, licensees, distributors, employees, co-venturers, partners, principals, and/or co-conspirators of each other, and at all relevant times were acting within the course and scope of said capacities.

**BACKGROUND:**

11.     WARRIOR is a world famous professional wrestler and creator, producer, and innovator in many forms of multi-media entertainment. Among WARRIOR's enterprises are WARRIOR UNIVERSITY (a training school for persons seeking careers in professional wresting), WARRIOR'S WORLD (a mail order service featuring merchandise and souvenirs), WARRIOR comic book (a publication featuring the WARRIOR character in a fight of good against evil); and WARRIOR fantasy camp (where professional wrestlers are invited to train with amateur athletes). WARRIOR also organizes and participates in a public speaking campaign under a theme ALWAYS BELIEVE. Through the ALWAYS BELIEVE campaign, WARRIOR encourages children and young adults to "live the life in the way of a warrior" and to abstain from reckless behavior and violence. The ALWAYS BELIEVE campaign is comprised of eight disciplines for living a life of self-empowerment. Many of these themes also are a central theme promoted in WARRIOR's series of comic books.

12.     On February 19, 1996, WARRIOR and defendant TITAN entered into a contract whereby WARRIOR agreed to provide professional wrestling services to TITAN and WWF for a term of eighteen (18) months. In exchange for said services, TITAN agreed to pay  WARRIOR cash compensation of not less than One Million Dollars ($1,000,000.00) as well as assignment of certain intellectual property rights concerning WARRIOR and ULTIMATE WARRIOR trademarks and service marks and registrations thereof. Under the Agreement, TITAN also agreed to pay WARRIOR certain other non-cash compensation, including participation in development and operation of a training academy for professional wrestling and a series of comic books featuring a lead character resembling plaintiff WARRIOR. The Agreement also provided for TITAN and WARRIOR to mutually plan a Warrior World Tour as well as merchandising of products and services under a designation "Warrior World". Said Agreement is attached, marked as Exhibit B, and incorporated herein by reference.

13.     Prior to WARRIOR's return to professional wrestling at Wrestlemania XII on March 31, 1996, WARRIOR long had been a world renowned professional wrestler and entertainer.  WARRIOR and TITAN previously had been parties to two other agreements under which WARRIOR provided professional wrestling services to TITAN for commercial exploitation.

14.     From 1987 to early 1991, WARRIOR and his counterpart, HULK HOGAN, were considered by their peers and by wrestling fans to be the top performers in the wrestling industry.  During his career, WARRIOR has portrayed a "good guy" character and long has been perceived as such by wrestling fans. WARRIOR is recognized throughout the world as the first wrestler to have pinned HULK HOGAN in a match-up of "good guy versus good guy".  During the aforementioned period and continuing until the present, WARRIOR merchandising items have been top sellers for TITAN and have contributed significantly to success of TITAN and the WWF after retirement of HULK HOGAN in approximately 1992.

15.     It was during the course of the first agreement between WARRIOR and TITAN that, in or about August 1990, relations between WARRIOR and TITAN began to deteriorate.  For a period of 6-7 months in late 1990, TITAN and its principal agent, Vincent K. McMAHON, compelled WARRIOR to work an average of 27 days per month at WWF tapings, live performances and appearances.  During that 6 months, WARRIOR was kept on the road by TITAN and not permitted to return home to attended to family matters even though WARRIOR had requested to do so.  Moreover, although TITAN had agreed to increase compensation to WARRIOR as a condition of WARRIOR's continued service to TITAN and WWF, TITAN later reneged on its agreements and wrongfully terminated WARRIOR's contract.

16.     Approximately eight (8) months after WARRIOR's forced departure from the WWF, in spring of 1992, defendants McMAHON and TITAN sought return of WARRIOR to professional wrestling.  Upon information and belief, a principal reason for change of heart by McMAHON and TITAN was due to intense consumer demand for WARRIOR related products and favorable recognition of WARRIOR among wrestling fans.  As partial consideration for WARRIOR's return to wrestling, McMAHON and TITAN agreed that WARRIOR would be entitled to pursue other personal business ventures during his term with the WWF.

17.     Shortly after WARRIOR's return to the WWF, a federal grand jury indicted McMAHON for allegedly requiring WWF wrestlers to use anabolic steroids.  At that time, McMAHON told WARRIOR that it was McMAHON's intention to introduce to the WWF a different style of wrestling oriented toward development

of fictional characters and storylines rather than bodybuilders and fantasy characters. However, the second relationship between WARRIOR and TITAN quickly soured a month later when WARRIOR requested that McMAHON and TITAN formalize in a written contract agreements which had been reached between the parties. When WARRIOR presented TITAN with a written contract to the foregoing effect, McMAHON and TITAN refused to honor their commitments to WARRIOR and terminated its relationship with WARRIOR. As a purported reason for said termination, McMAHON and TITAN, upon information and belief, disseminated false accusations that WARRIOR was part of an alleged international conspiracy to import anabolic steroids in to the United States.

18.     For a third time, in January 1996, McMAHON personally approached WARRIOR to negotiate WARRIOR's return to the WWF at Wrestlemania XXII. At that time, McMAHON and TITAN assured WARRIOR that WARRIOR would be the featured wrestler among WWF wrestlers. McMAHON and TITAN also agreed that they would participate in several of WARRIOR's business ventures, including development and operation of Warrior University.

19.     From April to mid-June 1996, WARRIOR wrestled at approximately 40 wrestling events in various cities throughout the United States and Canada. During that time, WARRIOR repeatedly requested that TITAN fulfill commitments that McMAHON and TITAN had made concerning business ventures of plaintiffs, however, McMAHON and TITAN merely stalled and delayed. During this time WARRIOR also disclosed in confidence to McMAHON and several other representatives of TITAN, including its President, Linda McMahon, plans which WARRIOR had developed respecting his ALWAYS BELIEVE project and other related business ventures. During said meetings, Linda McMahon and TITAN's marketing director, Jim Bell, assured WARRIOR that all such ideas and projects of WARRIOR would be held in strict confidence and trust and would not be disclosed to anyone unless TITAN had been authorized to so do by WARRIOR.

20.     In spite of TITAN's repeated assurances of confidentiality to WARRIOR, TITAN commenced widespread use of many of plaintiffs' ALWAYS BELIEVE concepts, including extensive exploitation at an annual trademark licensing convention in New York City during the week of June 26, 1996. In an apparent effort to conceal defendant TITAN's misappropriation of WARRIOR's business proposals, representatives of TITAN, including Vince and Linda McMahon and Jim Bell, requested that WARRIOR not attend the licensing convention which WARRIOR regularly had attended in prior years during his employment with TITAN.

21.     Having suspected that wrongdoing by TITAN and McMAHON was afoot, WARRIOR flew immediately to New York City on June 28, 1996 to attend the licensing show and found that TITAN and McMAHON blatantly had broken its promise not to reveal or use plaintiffs' ALWAYS BELIEVE concepts. At the same time, WARRIOR also learned that his father was terminally ill and near death. WARRIOR immediately telephoned Linda and Vince McMahon to discuss issues concerning abuses at the licensing show as well as WARRIOR's need to attend to exigent concerns of his family. On the evening of June 28th, McMAHON and TITAN were well aware that WARRIOR needed to attend to family matters and that WARRIOR could not wrestle at WWF events that evening (Pittsburgh) and on the following Saturday (Indianapolis) and Sunday (Detroit).

22.     Notwithstanding prior knowledge of WARRIOR's intention not to wrestle during the weekend of June 28-30, when WWF matches commenced in Pittsburgh on Friday, June 28th, representatives of TITAN announced to the audience that WARRIOR had "refused to wrestle." Similar announcements also were made during matches on Saturday and Sunday June 29th and 30th. Actions by TITAN and McMAHON were intended to defame and disparage reputation of WARRIOR by creating an impression that WARRIOR did not like fans in Pittsburgh, Indianapolis and Detroit.

23.     On the following Monday, July 1st, during a nationwide telecast called "Monday Night Raw," representatives of TITAN, namely a fictitious President of the WWF called "Gorilla Monsoon," announced to television viewers and fans that WARRIOR had been "suspended from wrestling" and would not be permitted to return to the WWF unless WARRIOR posted a $250,000.00 bond. TITAN and McMAHON also disseminated similar false and disparaging information over a call-in telephone service as well as the American On-Line computer network. The foregoing acts by McMAHON and TITAN were a flagrant repudiation of the Agreement as well as an intentional conspiracy to disparage and defame reputation of plaintiffs.

## PLAINTIFFS' SERVICE MARKS AND TRADEMARKS:

24.     Plaintiffs WARRIOR and ULTIMATE CREATIONS sell goods and render services under trademarks, service marks and trade names including, but not limited to, "WARRIOR," "ULTIMATE WARRIOR," "ALWAYS BELIEVE" and "WARRIOR'S WORLD" as well as certain logo designs used in connection with all of the foregoing marks (hereinafter collectively referred to as the "WARRIOR marks" and/or

the "marks"). Plaintiffs' marks are inherently distinctive, and have been used extensively, advertised and promoted throughout the United States and the world in connection with plaintiffs' wrestling and wrestling-related goods and services as well as many other goods and services which emanate from plaintiffs. Substantial amounts of money have been spent in establishing this affiliation so that consumers recognize the WARRIOR marks as identifying plaintiffs and the quality goods and services that they offer under the WARRIOR marks.

25.   ULTIMATE CREATIONS is owner of the following relevant trademark and service mark registrations throughout the world:

| COUNTRY | (Class) | | SERIAL NO./ REG. NO. | MARK | |
|---|---|---|---|---|---|
| Belgium | 16 | Reg | 503,014 | ULTIMATE WARRIOR | |
| Canada | | Reg | 417,315 | ULTIMATE WARRIOR | |
| China | 28 | Reg | 633,799 | ULTIMATE WARRIOR | |
| China | 41 | Reg | 722,218 | ULTIMATE WARRIOR | |
| France | 16 | Reg | 1,704,494 | ULTIMATE WARRIOR | |
| Germany | 9 | Reg | 2,083,539 | ULTIMATE WARRIOR | |
| Israel | 25 | Reg | 88,087 | ULTIMATE WARRIOR | |
| Israel | 28 | Reg | 84,201 | ULTIMATE WARRIOR | |
| Israel | 41 | Reg | 84,204 | ULTIMATE WARRIOR | |
| Italy | 28 | Reg | 610,480 | ULTIMATE WARRIOR | |
| Italy | 16 | Reg | 634,448 | ULTIMATE WARRIOR | |
| Japan | 28 | Reg | 3,119,047 | ULTIMATE WARRIOR | |
| Japan | 41 | SN | 4-310962 | ULTIMATE WARRIOR | |
| Japan | 28 | SN | 4-310975 | ULTIMATE WARRIOR | |
| Mexico | 41 | Reg | 426,344 | ULTIMATE WARRIOR | |
| United Kingdom | 9 | Reg | 1,462,109 | ULTIMATE WARRIOR | |
| United Kingdom | 25 | Reg | 1,462,111 | ULTIMATE WARRIOR | |
| United Kingdom | 41 | Reg | 1,462,112 | ULTIMATE WARRIOR | |
| United Kingdom | 16 | Reg | 1,462,110 | ULTIMATE WARRIOR | |
| United States | 16 | Reg | 1,625,919 | ULTIMATE WARRIOR | |
| United States | 16 | Reg | 1,708,155 | WARRIOR | |

| United States | 20 | Reg | 1,708,236 | WARRIOR |
|---|---|---|---|---|
| United States | 28 | Reg | 1,775,325 | ULTIMATE WARRIOR & DESIGN |
| United States | 9 | Reg | 1,818,813 | ULTIMATE WARRIOR |
| United States | 28 | Reg | 1,838,771 | ULTIMATE WARRIOR |
| United States | 16 | SN | 75/112966 | ALWAYS BELIEVE |
| United States | 42 | SN | 75/112954 | WARRIOR'S WORLD |

26.     Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have had constructive notice and knowledge of plaintiffs' trademark and service mark rights and, in fact, TITAN has had actual knowledge of many of plaintiffs' marks in that TITAN was predecessor-in-interest to certain of the WARRIOR marks having assigned same to ULTIMATE CREATIONS on May 16, 1996.

27.     As a result of long use and extensive advertising and promotion of plaintiffs' WARRIOR marks, said marks have become well and favorably known throughout Arizona, the United States and the world.

28.     Plaintiffs are informed and believe, and based on such information and belief allege, that since long prior to any acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 complained of in this complaint, and by virtue of the foregoing widespread use, promotion and recognition of the WARRIOR marks, plaintiffs have acquired a valuable commercial magnetism, a distinctive and secondary meaning signifying plaintiffs themselves and the goods and services provided by plaintiffs.

29.     On information and belief, from the date of defendant TITAN's breach of the Agreement and revocation of trademark license thereunder, defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have engaged in a systematic pattern of intentional trade dress infringement, service mark, trademark and trade name infringement, dilution and unfair competition.

30.     Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have had actual knowledge of plaintiffs, their products, reputation, trading style, trade dress, service marks, trademarks and trade name. Defendants also know that their use and commercial exploitation of WARRIOR marks is without authorization or consent by plaintiffs.

31.     Goods and services of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 are advertised and promoted in similar channels of trade and are directed to the same consumers as plaintiffs' goods and services. Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have infringed and have conspired to infringe on the rights of plaintiffs by selling goods and/or rendering services using trademarks and service marks that are confusingly similar to the distinctive trademarks and service marks used by plaintiffs for substantially identical goods and services.

32.     Advertisement, promotion and sale of goods and services by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 using marks that imitate or simulate plaintiffs' WARRIOR marks falsely represents to Arizona consumers that defendants' goods and services originate with or are endorsed by plaintiffs or that plaintiffs and said defendants are affiliated or have common sponsorship.

33.     Use of infringing trademarks and service marks by TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 that imitate or simulate plaintiffs' WARRIOR marks have in the past and will continue to cause confusion, mistake or deception among the public.

34.     Unauthorized use by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 of WARRIOR marks as set forth above is likely to cause members of the Arizona public to believe mistakenly that said defendants' goods and services originate with or are rendered by or in affiliation with, or under license from, or with the approval of plaintiffs, when, in fact, they are not.

35.     Use of confusingly similar trademarks and services marks by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 is likely to and does permit defendants to misappropriate and unfairly trade on valuable good will and reputation of plaintiffs and will subject that good will and reputation in plaintiffs' marks to the hazards and perils attendant upon business activities of said defendants, over which plaintiffs have no control.

36.     Plaintiffs are informed and believe, and based on that information and belief allege, that defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15, with actual knowledge of the public's identification of plaintiffs' service marks, trademarks, trade names and trade dress with plaintiffs' goods and services, intentionally have used and are using the WARRIOR marks and as a result have misled and deceived the Arizona public into believing that goods and service of said defendants, which are substantially identical to plaintiffs' goods and services, are affiliated with or sponsored or approved by plaintiffs.

37.     The misappropriation and misuse by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 of the name and mark WARRIOR is a false designation of origin as to the goods and services made available by said defendants in intrastate commerce within the State of Arizona and in interstate commerce among the United States.  Consumers who use goods and services of said defendants, hear about or read advertisements for the goods and services are led to believe that the goods and services associated with said defendants originate with plaintiffs or are sponsored by or affiliated with plaintiffs whereas, in fact, defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have no valid connection whatsoever with the plaintiffs and whereas, in fact, plaintiffs have no responsibility for, nor control over, the acts of those defendants or the quality of the goods sold or services rendered thereby.

38.     The use and advertisement by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 of trademarks and service marks confusingly similar to plaintiffs' marks, the commencement and continuation of such use, and all of the other acts of said defendants, jointly and separately, as alleged above in this complaint, create a likelihood that the public will be confused as to source, sponsorship and/or affiliation of the goods and services emanating from said defendants. Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have caused and, unless restrained by this court, will continue to cause plaintiffs substantial damage and irreparable injury by such false designation of origin.  Such wrongful acts have caused and will continue to cause grave injury to the public as well.

39.     Plaintiffs are informed and believe, and based on such information and belief allege, that defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 are likely to cause, have caused and are now causing widespread confusion, mistake and deception in the public mind, and that many persons believe and are likely to believe that said defendants' goods and services are rendered by plaintiffs or are sponsored, approved, endorsed or in some way legitimately connected with plaintiffs.

40.     Defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 are unfairly competing with plaintiffs by adopting the WARRIOR marks to identify said defendants' goods and services, the intent and result of which has been, and continues to be, a palming off of defendants' goods and services as emanating from or being endorsed by plaintiffs, causing confusion, mistake or deception among the public as to source or origin of such goods and services.

41.     Use by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 of the WARRIOR marks has caused and, unless restrained, will continue to cause injury to plaintiffs' business reputation and dilution of the distinctive quality of plaintiffs' marks.

42.     Plaintiffs are informed and believe, and based on such information and belief allege, that defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have, with intent to sell goods and services, disseminated to the public untrue and misleading statements by their unlawful and infringing use of trademarks and service marks, trade names and trade dress that are confusingly similar to plaintiffs' WARRIOR marks.  Defendants PROMOTIONS, TORGERSON, MACFRUGALS, and DOE 1-15 know or reasonably should have known that their unlawful and infringing use of confusingly similar trademarks and service marks, trade names and trade dress constitutes untrue and misleading statements to the public.  On information and belief, such acts of defendants have been knowingly committed with an intention and purpose of deceiving the public into believing that defendants and plaintiffs are one and the same or that defendants are affiliated with, sponsored by or otherwise under common control with plaintiffs, and with the further intent to inducing the public into purchasing defendants' goods and services.

43.     Plaintiffs are informed and believe, and based on that information and belief allege, that the tortious acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 complained of in this complaint have been committed willfully and with full

knowledge of plaintiffs' rights and with an intention of deceiving and misleading the public at large and that said defendants are wrongfully trading on good will and reputation of plaintiffs.

44.    By their wrongful acts, defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 have caused and, unless restrained by this court will continue to cause serious irreparable injury and damage to plaintiffs and to the good will associated with plaintiffs' WARRIOR marks in this State and elsewhere throughout the United States. Plaintiffs have no adequate remedy at law.

## FIRST CLAIM FOR RELIEF

## DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

## UNDER ARIZ. REV. STAT. §§ 12-1831 and 12-1801

45.    Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-44, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

46.    Under terms of the Agreement between plaintiff WARRIOR and defendant TITAN, plaintiffs granted a license to TITAN to use a mark ULTIMATE WARRIOR solely in connection with "wrestling-related" activities, including, wrestling performances, appearances, merchandise items and videos. In addition, under terms of said Agreement, WARRIOR granted TITAN an exclusive right during the term of the Agreement to fully exploit the character, marks, indicia, persona, performances, and image and likeness of "The Ultimate Warrior."

47.    Under terms of the Agreement, plaintiffs have no right or license to use certain marks, including, but not limited to, ALWAYS BELIEVE and WARRIOR'S WORLD.

48.    On July 23, 1996, plaintiffs attorneys, Hart, Baxley, Daniels & Holton notified defendant TITAN in writing that plaintiffs had rescinded the above described trademark license and related licenses inasmuch as defendant TITAN had repudiated its obligation to WARRIOR under the Agreement. See Exh. A. In the July 23rd letter, plaintiffs attorneys also demanded that TITAN cease and desist from further use of the WARRIOR and ULTIMATE WARRIOR trademarks and provide a complete report of said marks by TITAN and/or licensees thereof so that plaintiffs could prepare an invoice for royalties due to plaintiffs.

49.    Although plaintiffs had rescinded the licensing agreement with respect to the marks WARRIOR and ULTIMATE WARRIOR, defendant TITAN has refused to cease selling goods and services under said marks, and defendant in fact continues to sell goods and services bearing the marks WARRIOR and ULTIMATE WARRIOR in this State and throughout the United States and the world.

50.    The wrongful conduct of defendant TITAN as described above, unless restrained and enjoined by this court, will cause great and irreparable damage and harm to plaintiffs, in that plaintiffs' reputation and good will, built up over many years, will be seriously and perhaps irrevocably harmed if defendant is allowed to continue its actions.

51.    Plaintiffs have no adequate remedy at law for the injuries and damages plaintiffs have suffered, and will continue to suffer in the future unless defendant TITAN's wrongful conduct is restrained and enjoined, because it is and will be impossible for plaintiffs to determine the precise amount of damages, and no amount of money can compensate plaintiffs for the harm that has been done and will be done to plaintiffs' reputation and good will.

52.    By reason of the foregoing acts, plaintiffs request that the court enter a judgment rescinding the licensing agreement entered into between plaintiffs and TITAN and enjoin said defendant, and anyone acting on behalf of or in concert therewith, from selling, at any location within Arizona and throughout the United States and the world all goods and services under plaintiffs' marks WARRIOR, ULTIMATE WARRIOR, ALWAYS BELIEVE and WARRIOR'S WORLD as well as any other marks which are confusingly similar thereto.

SECOND CLAIM FOR RELIEF

BREACH OF CONTRACT

53.    Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-52, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

54.    On February 19, 1996, plaintiff WARRIOR and defendant TITAN entered into a written contract whereby TITAN agreed to employ WARRIOR as a professional wrestler for a term of eighteen (18) months, from February 19, 1996 through and including August 31, 1997.  As consideration for said services, TITAN agreed to pay WARRIOR a sum not less than One Million Dollars and 00/100 ($1,000,000.00) in equal weekly payments of $12,820.00.  As additional consideration to WARRIOR, TITAN also agreed to participate in other ventures of Plaintiffs, including, Warrior University, Warrior comic books and a Warrior World Tour.

55.     WARRIOR has performed everything required of him to receive payment and other valuable consideration and performance from TITAN.

56.     Notwithstanding WARRIOR'S compliance and performance of all of its obligations under the Agreement, on or about June 26, 1996, TITAN informed WARRIOR verbally and in writing that TITAN repudiated the Agreement and no longer intended to perform its obligations thereunder. A notice to the foregoing effect also was published by TITAN on the America Online computer network on July 1, 1996. A copy of said notice is attached, marked as Exhibit C, and incorporated herein by reference.

57.     By reason of the foregoing acts by defendant TITAN as well as intentional, willful and deliberate acts committed by defendant McMAHON to cause breach of said Agreement, as well as consequential damages, WARRIOR has suffered losses in a sum to be proven at trial.

### THIRD CLAIM FOR RELIEF

### PAYMENT OF WAGES

58.     Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-57, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

59.     During WARRIOR's service to TITAN, the relationship between said parties was that of an employee and employer and defendant TITAN's refusal to permit plaintiff to serve as agreed constitutes a refusal to pay wages.

60.     Plaintiff WARRIOR is ready, willing and able to perform duties required of him to be performed as part of his employment by defendant TITAN.

61.     By reason of the foregoing acts, WARRIOR has been damaged in a sum to be proven at trial, which amount shall be trebled under A.R.S. §23-355.

### FOURTH CLAIM FOR RELIEF

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

62.     Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1- 61, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

63.     The law implies a duty of good faith and fair dealing in every contract. Accordingly, under the Agreement, TITAN owed said duty to WARRIOR.

64.   Defendant TITAN, by reason of the foregoing acts, has breached that duty to WARRIOR, thereby causing damages to WARRIOR in an amount to be proven at trial.

65.   Defendant McMAHON, by reason of the foregoing acts, has caused TITAN to breach the duty of good faith and fair dealing owed by TITAN to WARRIOR, thereby causing damages to WARRIOR in an amount to be proven at trial.

## FIFTH CLAIM FOR RELIEF

## INJURIOUS FALSEHOOD

66.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-65, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

67.   Defendants TITAN and McMAHON, by reason of the foregoing acts, have published matter derogatory to the plaintiffs' business of a kind calculated to prevent others from dealing with plaintiffs or otherwise to interfere with plaintiffs' relations with others, all to plaintiffs' disadvantage and loss in an amount to be proven at trial.

## SIXTH CLAIM FOR RELIEF

## MISAPPROPRIATION OF BUSINESS OPPORTUNITIES

68.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-67, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

69.   While in a confidential and/or employment relationship with defendants McMAHON and TITAN, said defendants appropriated to their own account and took advantage of business opportunities that rightly belonged to plaintiffs.

70.   As a result of activities and intentional acts on the part of McMAHON and TITAN, plaintiffs have lost substantial sums representing the profits plaintiffs would have realized on the business McMAHON and TITAN appropriated to their own account in an amount that plaintiffs are unable to determine without an accounting of the business of said defendants in competition with the business of plaintiffs.

71.   By reason of the foregoing acts, plaintiffs demand that the court order an accounting of the business activities and profits obtained by the McMAHON and TITAN on said defendants' own account and in competition with the business of plaintiffs and further that the court award damages to plaintiffs for all profits revealed by such accounting.

AUG 30 '96  02:50PM

## SEVENTH CLAIM FOR RELIEF

## MISREPRESENTATION TO PROSPECTIVE EMPLOYERS

72.     Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-71, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

73.     Following repudiation of the Agreement by TITAN on June 26, 1996, McMAHON and TITAN made false representations concerning WARRIOR's integrity, business reputation, character and good name, the exact dates on which said representation were made being unknown to plaintiffs, with a purpose and an intention on the part of TITAN to hinder or prevent WARRIOR from securing future employment as a professional wrestler.

74.     Specifically, McMAHON and TITAN published statements that plaintiff WARRIOR refused to wrestle in certain cities with an intention and purpose on the part of TITAN to tarnish image, reputation and integrity of WARRIOR in the wrestling profession and among wrestling fans.

75.     As a direct and proximate result of the false representations made by McMAHON and TITAN and communicated to prospective employers of WARRIOR, WARRIOR has been unable to secure, and did not secure, employment, and thereby lost wages, salary, and other emoluments and were caused to waste travel expenses and other costs of a value not less than Three Million Dollars ($3,000,000.00), the exact amount to be proven at trial.  Plaintiff WARRIOR was further damaged in the sum of Fifty Thousand Dollars ($50,000.00) for wasted travel expenses and other costs.

## EIGHTH CLAIM FOR RELIEF

## LIBEL

## UNDER ARIZ. REV. STAT. §12-651

76.     Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-75, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

77.     For several days following TITAN's breach of the Agreement as set forth hereinabove, defendants McMAHON and TITAN published via television broadcast, downloadable computer transmissions, prerecorded telephone messages and various other means of communication, republished and repeated false statements which defamed integrity, honesty and business reputation of plaintiffs.  Said statements were untrue and were known by defendants McMAHON and TITAN to be untrue or were otherwise made by said defendants with a reckless

AUG 30 '96  02:50PM

disregard for truth.

78.   The foregoing statements by McMAHON and TITAN constitute a publication which impeaches honesty, integrity and reputation of plaintiffs and are libelous per se.

79.   The foregoing statements by McMAHON and TITAN disgraced the good name of plaintiffs and held said plaintiffs up to public hatred, contempt and ridicule, thereby causing damages to plaintiffs in an amount to be proven at trial.

## NINTH CLAIM FOR RELIEF

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

80.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-79, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

81.   Defendants McMAHON and TITAN intentionally breached their contractual obligations to plaintiff WARRIOR so as to harass, vex and cause plaintiff WARRIOR emotional and physical distress.

82.   Libelous statements described herein in plaintiffs' Sixth Claim also were made by defendants McMAHON and TITAN so as to harass, vex and cause plaintiff WARRIOR emotional and physical distress.

83.   As a result of intentional acts by McMAHON and TITAN, plaintiff WARRIOR endured and continues to endure extreme mental anguish and emotional distress along with physical ailment from the date that WARRIOR unlawfully was prevented from performing under the Agreement.  Since that date WARRIOR also has suffered headaches, insomnia and other physical conditions as a result of the severe emotional distress caused by intentional conduct of said defendants.

84.   By reason of the foregoing intentional acts and a direct and proximate result of the disabling injuries sustained by the plaintiffs, plaintiffs were damaged in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

85.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-84, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

86.   As a result of negligent infliction of emotional distress by defendants McMAHON and TITAN, plaintiff WARRIOR has endured and continues to endure extreme mental anguish and emotional distress along with physical ailment from the date that WARRIOR unlawfully was prevented from performing under the

AUG 30 '96  02:50PM

Agreement and from the date libelous statements were made by said plaintiffs. WARRIOR also has suffered headaches, insomnia and other physical conditions as a result of the severe emotional distress caused by negligent conduct of said defendants.

87.     By reason of the foregoing negligent acts and a direct and proximate result of the disabling injuries sustained by the plaintiffs, plaintiffs were damaged in an amount to be proven at trial.

## ELEVENTH CAUSE OF ACTION
## FRAUDULENT INDUCEMENT OF CONTRACT

88.     Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-87, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

89.     During the course of negotiations of the Agreement between WARRIOR and TITAN, McMAHON and TITAN represented to plaintiffs that TITAN was committed to developing a business plan as well as providing on a continuous basis during the 18-month term of the Agreement an advertising and marketing program for WARRIOR University and other business ventures of plaintiffs. During said negotiations McMAHON and TITAN further represented to plaintiffs that TITAN would provide advertising in Titan-sponsored magazines and television programs for purposes of promoting plaintiffs' WARRIOR comic book as well as plan a Warrior World Tour. All of the foregoing representations, as well as other representations, misrepresentations and concealments, were made by McMAHON and TITAN in order to induce WARRIOR to enter into the Agreement and to provide professional wrestling and other services to TITAN thereunder.

90.     The above described representations were false when McMAHON and TITAN made them in that said defendants knew that TITAN would obtain benefits from WARRIOR's professional wrestling services as well as licenses to use WARRIOR trademarks while defendants concealed their intention to terminate the Agreement without paying full compensation rightfully due and owing to plaintiffs.

91.     Defendants McMAHON and TITAN knew that the foregoing representations were false when defendant made them.

92.     Defendants McMAHON and TITAN made the foregoing false representations and concealed other material facts with an intent and for a purpose of deceiving WARRIOR and to induce plaintiffs to rely on said representations.

AUG 30 '96  02:50PM

93.   By reason of the foregoing fraudulent acts by defendants McMAHON and TITAN, plaintiffs were damaged in an amount to be proven at trial.

## TWELFTH CAUSE OF ACTION

## TRADEMARK AND SERVICE MARK INFRINGEMENT

## UNDER ARIZONA REV. STAT. §§44-1451-52

94.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-93, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

95.   Above averred acts concerning use and exploitation of WARRIOR marks by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute infringement of plaintiffs' trademarks and service marks in violation of Arizona Revised Statute, sections 44-1451 and/or 44-1452.

## THIRTEENTH CAUSE OF ACTION

## TRADE NAME INFRINGEMENT

## UNDER ARIZ. REV. STAT. §44-1460.04

96.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-95, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

97.   Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute trade name infringement in violation of Arizona Revised Statute, section 44-1460.04.

## FOURTEENTH CAUSE OF ACTION

## USE OF A COUNTERFEIT LABEL, TRADEMARK OR ADVERTISEMENT

## UNDER ARIZ. REV. STAT. §44-1453

98.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-97, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

99.   Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute counterfeiting or use of a counterfeit of a label, trademark or form of advertisement adopted by a corporation in violation of Arizona Revised Statute, section 44-1453.

AUG 30 '96   02:50PM

## FIFTEENTH CAUSE OF ACTION

## TRADEMARK COUNTERFEITING AND PASSING OFF

## UNDER ARIZ. REV. STAT. §44-1454

100.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-99, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

101.   Above averred acts by defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute a knowing reproduction, copying, forging, counterfeiting and/or imitation of a trademark affixed to goods with an intent on said defendants' part to pass off goods as those of plaintiffs in violation of Arizona Revised Statute, section 44-1454.

## SIXTEENTH CAUSE OF ACTION

## SALE OF COUNTERFEIT GOODS

## UNDER ARIZ. REV. STAT. §44-1455

102.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-101, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

103.   Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute a knowing sale or keeping for sale of goods upon or to which a counterfeit trademark is affixed with an intention to represent such goods as genuine goods of plaintiffs when, in fact, said defendants knew or should have know said trademark to be counterfeit.

## SEVENTEENTH CAUSE OF ACTION

## COMMON LAW UNFAIR COMPETITION

104.   Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-103, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

105.   Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute trademark infringement, unfair competition and passing off in violation of the common law of the State of Arizona.

AUG 30 '96  03:52PM

## EIGHTEENTH CAUSE OF ACTION
### DECEPTIVE BUSINESS PRACTICES
### UNDER ARIZ. REV. STAT. §13-2202

106.  Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-105, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

107.  Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 constitute deceptive business practices under Arizona law in that said defendants represented to the public that goods and services being sold or offered for sale under the WARRIOR marks were goods and services emanating from another person when in fact they did not and do not so emanate.

## NINETEENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONSHIP

108.  Plaintiffs hereby reallege and incorporate by reference the allegation of paragraphs 1-107, inclusive, and the acts of defendants asserted in those paragraphs, as if here set forth in full.

109.  Above averred acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, BAGGUS, MACFRUGALS and DOE 1-15 constitute tortious interference with contractual relationships of plaintiffs.

WHEREFORE, plaintiffs pray as follows:

    A.    Permanently enjoin and restrain defendants, their officers, directors, agents, servants, employees, successors and assigns, and all those in active concert or participation with them from:

        (1)    engaging in any merchandising activity, including sale of, the offering for sale, or the distribution of gifts; novelties; games; toys; apparel; accessories; stationery; home furnishings; publishing; comic books; paperback books; hard cover books; greeting cards; calendars; food; plush or vinyl dolls; figurines; ceramics; keychains; pens; pencils; watches; hats; caps; gift wrap; decorations; invitations; holograms; magnets; posters; playing cards; balloons; stickers; wallpaper; temporary taboos; party goods; napkins; tablecloths; cups; mugs; ornaments; collectibles; cells; erasers; computer games; home video; all audio formats; CD-ROM; cable and satellite delivery; or other merchandising

AUG 30 '96  02:50PM

activity regarding the WARRIOR marks and any other trademark, service mark, tradename, copyright, persona or commercial impression of plaintiffs; the plaintiff WARRIOR, and/or any likeness thereof, that constitutes unfair competition or infringement of any of plaintiffs' said rights, or of plaintiffs' exclusive right to exploit any of the foregoing;

(2) engaging in any activity constituting misappropriation or unfair competition or constituting infringement of any of plaintiffs' trademarks, service marks, trade names, copyrights, persona or commercial impression, or other similar rights, or of plaintiffs' rights in, or to use or exploit, any of the foregoing;

(3) misappropriating and infringing plaintiffs' trademarks, service marks, trade names, copyrights, or other similar rights in any manner and from reproducing, distributing, exhibiting or otherwise disseminating any advertisements containing such infringing material;

(4) making any statement or representation whatsoever, or using any false designation of origin or false description (including without limitation, any works or symbols), or performing any act, which can, or is likely to, lead the trade or public, or individual members thereof, to believe that any product manufactured, reproduced, distributed, exhibited or sold by defendants is in any manner associated or connected with plaintiffs WARRIOR or ULTIMATE CREATIONS, or is sold, manufactured, licensed, affiliated, approved or authorized thereby; and

(5) otherwise using any creations or proprietary information of plaintiffs WARRIOR or ULTIMATE CREATIONS for any commercial purpose whatsoever.

B. Entering a judgment rescinding the licensing agreement entered into between WARRIOR and TITAN on February 19, 1996 and enjoining defendants, and anyone acting on behalf of or in concert therewith, from selling or otherwise commercially exploiting, at any location within this State and throughout the United States and the world any goods and services under plaintiffs' WARRIOR marks as well as any other marks which are confusingly similar thereto.

AUG 30 '96  02:50PM

C.    Requiring defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to pay plaintiffs:

(1)    such damages as plaintiffs have sustained as a consequence of defendants' trademark, service mark, trade name and other infringements and unfair competition;

(2)    all gains, profits and advantages derived by defendants by reason of said infringements, unfair competition and dilution;

(3)    all gains, profits and advantages derived by defendants by virtue of their infringements, or such damages as to the court shall appear proper within the provisions of the applicable laws;

D.    Requiring defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to grant plaintiffs a complete accounting of said defendants' documents, books, contracts, and records concerning all merchandising revenue derived from sale of goods and services under plaintiffs' WARRIOR marks and any mark confusingly similar therewith and to require defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 to provide copies of all agreements entered into with third parties concerning sale or offering for sale of such goods and services.

E.    For acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 averred in plaintiffs' claims SECOND THROUGH and including NINETEENTH, awarding to plaintiffs compensatory damages, in an amount to be proven at trial.

F.    For acts of defendants TITAN, McMAHON, INTERNATIONAL PROMOTIONS, TORGERSON, MACFRUGALS and DOE 1-15 averred in plaintiffs' claims SECOND THROUGH and including NINETEENTH, awarding to plaintiffs punitive damages, in an amount to be proven at trial.

G.    Awarding to plaintiffs the costs and disbursements of this action together with their reasonable attorneys' fees.

H.    Awarding to plaintiffs such other and further relief as the court deems just and proper.

I.    Plaintiffs WARRIOR and ULTIMATE CREATIONS, INC. hereby demand trial by jury herein.

24

AUG 30 '96  02:50PM

1

2

3  DATED: *August 28*, 1996.

4

5

6

7

I:\WARRIOR\COMPLAIN.WPD

HEBERT, SCHENK & JOHNSEN, P.C.

By
Shawn K. Aiken
Philip R. Rupprecht
1440 E. Missouri, Suite 125
Phoenix, AZ 85014
Attorneys for Plaintiffs